26311. GEORGIA POWER COMPANY *v.* MURRAY.

DECIDED DECEMBER 20, 1937.

144

*Jule Felton, Foley & Chappell, Colquitt, MacDougald, Troutman & Arkwright,* for plaintiff in error.

*Gilbert C. Robinson, Grice & Grice,* contra.

PER CURIAM. ■ The gist of the action in the present case is that the defendant was negligent in failing to provide barriers to prevent the automobile, which the plaintiff's deceased son was driving at night, from traversing a sloping strip of land, 7 or 10 feet wide, adjacent to a highway, and thence into a pond which, with the land adjacent to the highway, was maintained by the defendant. We think that the case is to be determined by the ruling in *Greenfield* v. *Watson,* 54 *Ga. App.* 9 (187 S. E. 183), in which it was held: "The duty of a landowner not to maintain on his premises a dangerous excavation extends not only to express or implied invitees, but to travelers on a public sidewalk or highway or a much-traveled and commonly-used private way, immediately adjoining or closely adjacent to the excavation, so that persons passing along the sidewalk or way may not be injured, if, while in the exercise of ordinary care, by necessity or accident they slightly deviate from such sidewalk or way. But this duty does not extend to a person who is not an express or implied invitee, who falls into an excavation so far from a sidewalk or public or private way that it can not be reached by any slight or ordinary deviation incident to travel thereon by one exercising ordinary care." Quoting from several cases it was said in the opinion: "'The distance from the highway to that which caused the injury will in many cases determine whether there was a duty to guard the highway. When the adjacent land is level or practically so, and that which caused the injury is so far removed that a traveler in the exercise of due care would not have been injured thereby, no duty to the traveler would arise. When the land is precipitous, a duty to the traveler arises where under other conditions no duty would arise.' *City Council of Augusta* v. *Dozier,* 126 *Ga.* 524 (55 S. E. 234); *N., C. & St. L. Ry.* v. *Cook,* 177 *Ga.* 196, 199 (170 S. E. 28). If a hole on the property of a landowner becomes perilous to travelers on a highway, it makes no difference whether it already pre-existed on the land, or whether it was created by the direct act of the landowner, for it is his duty not only not negligently to create such a danger, but not negligently to maintain it. See *So. Ry. Co.* v. *Autry,* 36 *Ga. App.* 552 (137 S. E. 414). But 'the

owner of land traversed by a public highway is under no duty to a traveler along the highway to maintain in a safe condition for travel the abutting premises at a point such a distance from the highway that it can not be reached by the ordinary deviations from the highway incident to careful traveling thereon, but can only be reached by a traveler who has, negligently and in a manner oblivious of his own safety, completely abandoned the highway and gone over onto the abutting premises.' *Poole* v. *So. Ry. Co.*, 34 *Ga. App.* 290 (3) (129 S. E. 297). . . But where a traveler leaves a publicly-used passageway and is injured some distance therefrom, the landowner is not liable. *Etheridge* v. *Central of Ga. Ry. Co.*, 122 *Ga.* 853 (2), 855 (50 S. E. 1003). These restrictions and limitations on the liability of a landowner to persons traveling upon or close to public streets and highways and publicly-used private ways have not been extended in this State, but have been narrowed particularly in cases of owners of railroads with cuts or excavations running parallel to public highways." In *Frankum* v.. *Farlinger*, 35 *Ga. App.* 305 (132 S. E. 923), it was held: "The owner of premises abutting on a public road is under no duty to keep the premises at a point some distance from the road in a safe condition for pedestrians who, not in the ordinary course of travel, wander off the road and come uninvited on the premises. Thus, a person traveling along the road upon a dark night in an automobile, who leaves the automobile and goes uninvited upon the premises, and, at a point eight or ten feet from the road, falls into an unguarded well and is injured, can not recover from the owner of the premises for such injuries. [Citing.]"

The allegations of the petition show conclusively that the act of the driver of the automobile was not a "misstep" or a "slight deviation" which would be necessary to bring the present case within the ruling in *Greenfield* v. *Watson*, supra. Consequently no cause of action was set forth in any count of the petition. The present case is distinguishable from *City Council of Augusta* v. *Dozier*, referred to in *Greenfield* v. *Watson*, where the adjacent land was *precipitous*, and where, immediately upon a slight deviation, the traveler was imperiled. It is also distinguishable from *Cox* v. *Greenfield*, 50 *Ga. App.* 699 (179 S. E. 178), as pointed out in *Greenfield* v. *Watson*, supra, the averment in the petition

being that the injury occurred by a misstep while on a well-defined path. The allegations of the petition in the present case to the effect that the slope of land over which the traveler proceeded in leaving the highway was covered with evergreen brush and small trees negative any idea that the "slope" was a well-defined path or a continuation of the highway along which he was traveling.

The plaintiff sought to excuse the conduct of the driver of the automobile by certain allegations which appear as paragraph 22 in each count of the petition. In that paragraph it was alleged in count 1 that "the course that the automobile took into the lake was in no way controlled or directed by the said Murray; but it was caused by the sudden and involuntary falling asleep of the said Murray." No reason was assigned as to the cause of the "falling asleep." While the question whether or not it is negligent for a driver of an automobile to fall asleep while driving does not seem to have been specifically passed on in this State, it was said in Whiddon v. Malone, 220 Ala. 220 (124 So. 516, 519): "Without extending discussion, we hold that going to sleep at the wheel while operating a car is evidence of negligence. The dangers of running a car while asleep are so obvious as to need no comment. It is the duty of the driver to keep awake or cease to drive. A failure so to do is prima facie evidence of negligence. The burden passes to the defendant to show some unusual cause of his falling asleep which reasonable diligence could not foresee nor forestall." Mr. Blashfield in his Cyclopedia of Automobile Law (ed. 1927), vol. 1, 270, § 16, states: "In any ordinary case one can not go to sleep while driving an automobile without having relaxed the vigilance which the law requires, and it lies within his own control to keep awake or to cease from driving, and so the mere fact of his going to sleep while driving is a proper basis for an inference of negligence sufficient to make out a prima facie case against him for injuries sustained by another while so driving, and sufficient for a recovery if no circumstances tending to excuse or justify his conduct are proven." The petition does not allege any unusual cause of the driver's falling asleep which reasonable diligence could not forestall, and under count 1, paragraph 22, it is shown that the injuries he received were the result of his own negligence. In paragraph 22 of the second count it is alleged: "That the course that the automobile took into the lake was in no way

controlled or directed by the said Murray; but it was caused by an uncontrollable and unanticipated attack of some illness unknown to your petitioner which caused him to lose consciousness." This allegation shows nothing that it was the duty of the defendant to anticipate and provide against. As was said in City of Dallas *v.* Maxwell (Tex.), 248 S. W. 667, 27 A. L. R. 927, 933: "The weight of authority, which, to our mind, is in accord with sound principles, is to the effect that where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrences fall within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable. Of course this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable." In this opinion the case of *Corley* v. *Cobb County*, 21 *Ga. App.* 219 (93 S. E. 1015), was cited and discussed approvingly. It must be held that the allegations of paragraph 22, count 2, show a condition which it was not the duty of the defendant to foresee, and that the proximate cause of the plaintiff's son's injuries was the alleged illness and consequent loss of unconsciousness and of control of the automobile. In paragraph 22 of count 3 it is alleged: "That the course that the automobile took into the lake was in no way controlled or directed by the said Murray; but it was caused by his inadvertently and accidentally losing control of such of his faculties as are needed to drive an automobile safely along such roadway." What has been said immediately above applies equally here, and no further discussion is necessary.

The allegation of paragraph 22 of count 4 is: "That the course that the said automobile took was due to the driver being deceived by the deceptive appearance of the roadway suddenly and abruptly narrowing as aforesaid, and the sudden and abrupt turning to the right to go upon the concrete bridge structure." It is obvious that with the construction and maintenance of the public highway the defendant had nothing to do. If it was deceptive, the defendant was powerless to change the roadway, and was not liable for the alleged defect. See in this connection *Callaway* v. *Georgia Railroad & Banking Co.*, 53 *Ga. App.* 785 (187 S. E. 399); *Shedd* v. *Pollard*, 55 *Ga. App.* 828 (191 S. E. 492). In paragraph 9 of the several counts it is alleged that the edge of the "slope" along

which the car traveled before reaching the pond maintained by the defendant was covered with evergreen brush and small trees. This fact was enough to put any reasonable man on guard, and to cause him to anticipate that the highway would not continue in that direction but would turn to the right. It is common knowledge that evergreen brush and small trees are not found growing in a public highway such as is described in the petition. A proper construction of the petition requires a holding that the driver of the automobile was negligent in proceeding across such a described "slope," and that such negligence was the proximate cause of his injuries.

It follows from what is said above that the court erred in overruling the general demurrer to the petition.

*Judgment reversed. Sutton and MacIntyre, JJ., concur. Stephens, P. J., dissents.*

MacIntyre, J. The allegations of counts 1, 2, and 3 are in effect the same as count 4, except in count 1 the plaintiff alleged that her son voluntarily went to sleep, in count 2 she alleged that he was taken sick, and in count 3 that he involuntarily lost consciousness. "A proximate cause in the law of negligence is such a cause as operated to produce particular consequences without the intervention of any independent unforeseen cause without which the injuries would not have occurred." 21 Am. & Eng. Enc. Law (2d ed.) 485. The Supreme Court of the United States in Milwaukee &c. R. Co. *v.* Kellogg, 94 U. S. 469 (24 L. ed. 256), said: "It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. . . We do not say that even the natural and probable consequences of a wrongful act of omission are in all cases to be chargeable to the misfeasance or nonfeasance. They are not when there is a sufficient and independent cause operating between the wrong and the injury. In such a case the resort of the sufferer must be to the originator of the intermediate cause. But when there is no intermediate efficient cause, the original wrong must be considered as reaching to the effect, and proximate to it. The inquiry must, therefore, always be whether there was any interme-

150

diate cause disconnected from the primary fault, and self-operating, which produced the injury." Stoll *v.* Laubengayer, 174 Mich. 701, 705 (140 N. W. 532). Whether the plaintiff, who voluntarily started and was driving his automobile, voluntarily went to sleep thereafter, or involuntarily lost consciousness while thereafter driving said automobile, is, under the allegations of counts 1, 2, and 3 of this petition, a matter of no consequence, because the injury to the driver of the automobile resulted from the loss of entire control and direction of his car, and this loss of control, whether wilful or unconscious, was the immediate, efficient, direct cause of the injury. The law does not require a landowner to furnish protection against unconscious drivers of automobiles. Only when the landowner's misconduct causes the loss of control would he become liable, and then because his negligent act caused the loss of control and not because of negligence in not maintaining rails or barriers. Boos *v.* Northfield, 186 Mich. 386, 398 (15 N. W. 1042). "The weight of authority, which, to our mind, is in accord with sound principles, is to the effect that, where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrence falls within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable. Of course this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable." 27 A. L. R. 933, and cit. See especially *Corley* v. *Cobb County,* 21 *Ga. App.* 219 (supra). The duty of the landowner is to exercise ordinary care; and if he had to provide against the unconscious drivers of automobiles, he would be required to exercise extraordinary rather than ordinary care to prevent negligence. In other words, the defendant's duty was simply to provide for the usual and ordinary risks of travel; and under the facts as plead in this case, the lack of a barrier was in legal contemplation not the proximate cause but merely a fortuitous condition.

STEPHENS, P. J., dissenting. It appears from the allegations of the petition that the defendant maintained immediately adjacent to the highway on the left, where the highway turned to the right at the point where the automobile driven by the deceased ran off the road, a lake or pond of a sufficient depth to have caused the death by drowning of the plaintiff's son from his automobile fall-

ing therein. It is alleged that the automobile "went into that part of the lake which projects itself abruptly and directly in front of that part of the public road on which the automobile was moving." It is also alleged that this situation was dangerous to travelers along the roadway, and that the defendant was negligent in not erecting barriers along the roadway to protect travelers from being precipitated into the pond or water, and was negligent in failing to give warning to travelers of the dangerous situation. In *City Council of Augusta* v. *Dozier*, 126 *Ga.* 524 (supra), where the defendant maintained on its premises a lake or body of water which was 45 feet from the highway, but where immediately contiguous to the highway, on the premises of the defendant between the highway and the lake, there was a decided slope in the land, which made a situation dangerous to travelers on the highway who, without negligence, might deviate from the highway and be precipitated over the precipice into the lake, and where the defendant failed to erect along its land contiguous to the highway guards or protections to protect travelers from being precipitated over the precipice into the lake, it was held that the defendant was guilty of negligence as respecting travelers along the highway. In that case the court stated "when the owner creates and maintains upon his land an artificial lake or body of water so near the highway and so located relatively to the same that travel thereon is rendered unsafe, a duty to so guard the same that travelers in the exercise of due diligence will not fall or be precipitated therein devolves upon the owner." See *Cox* v. *Greenfield*, 50 *Ga. App.* 699, supra; 45 C. J. 860. The petition in counts 1, 2, and 3, wherein it appears that due to the conditions alleged and the alleged negligence of the defendant in maintaining on its premises a situation adjacent to the public road dangerous to travelers on the road, the plaintiff's son, in traveling along the road, involuntarily, due either to being asleep or becoming ill and unconscious, or by inadvertently and accidently losing control of his faculties, without negligence on his part, deviated from the highway and fell off the road into the lake adjacent thereto on the defendant's property and was drowned, set out a cause of action unless it appears as a matter of law, from the allegations in these counts of the petition, that the plaintiff by reason of the unconscious condition described was guilty of negligence proximately causing his death.

It is contended by counsel for the defendant, in their briefs, that the petition, properly construed, alleges that the deceased "ran off the cement culvert from the bridge projecting out into the pond," and that this "abutment is an integral part of the county bridge, and the defendant has no power, right, or authority to put guard rails upon it." In the petition as properly construed, as I understand it, it is alleged that at the point where the deceased's automobile ran off the road and into the lake or pond maintained by the defendant, the pond or lake which was on the land of the defendant immediately abutted the roadway. It appears from the pictures presented to this court by counsel for the defendant, illustrative of the allegations in the petition, that this culvert or so-called "abutment" of the bridge was considerably below the level of the roadway, and that any guard-rails which the defendant might erect at the point where the deceased's automobile ran off the road would not necessarily be erected upon this abutment of the bridge. This sufficiently disposes of the contention that no duty rested upon the defendant to erect any barriers where its property abutted the highway at the place where the deceased's automobile ran off the highway, because in so doing the defendant would have to erect barriers on the bridge or its abutment. The fact that the defendant was an alienee of a predecessor in title which had created the situation complained of on the defendant's property adjacent to the road does not excuse the defendant for negligently, as to travelers along the road, maintaining the alleged dangerous situation contiguous to the public road. The alleged situation does not constitute a nuisance to travelers along the adjacent road; and therefore it is not essential to a traveler's right of action against the defendant for negligently maintaining the dangerous situation and causing injury to a traveler who runs off the road, and is injured by falling into the lake, that the defendant as alienee be called upon to abate the condition as a nuisance.

A duty rests on the owner of premises immediately abutting a highway to exercise ordinary care to keep the premises safe for travelers along the highway, who in the ordinary course of travel might accidentally or inadvertently, without negligence, deviate from the highway on to the abutting premises. This duty is not limited to travelers who merely make slight deviations or missteps from the highway on to the abutting premises. It relates to all

travelers along the highway who in the ordinary course of travel may accidently or inadvertently, and without negligence, deviate from the highway, whether slightly or otherwise, on to the abutting premises. The suggestion that the owner of land abutting a public highway is under no duty to anticipate that travelers along the highway may fall unconscious, or for some cause become bereft of their faculties, and by reason thereof run off the highway on to the abutting premises, or that the landowner owes no duty to exercise ordinary care to keep the premises abutting the highway in a safe condition for travelers along the highway who may become unconscious or lose their faculties for any reason and go off the highway on to the adjoining premises, is untenable. The travelers along a highway to whom an abutting-property owner owes a duty to exercise ordinary care to keep his premises safe are travelers who unintentionally, accidentally, or inadvertently from any cause, without negligence, deviate from the highway, while in the ordinary course of travel, on to the adjoining premises. Where a traveler, by reason of being unconscious and having suddenly lost his faculties, deviates from the highway on to the adjoining premises, his deviation is necessarily unintentional, accidental, and inadvertent. Therefore the owner of the abutting land is under a duty to anticipate that travelers along the highway might unintentionally, accidentally, or inadvertently, from some cause, such as becoming unconscious, without negligence, deviate from the highway on to the adjoining premises. Where a traveler along a highway, who in the ordinary course of travel, by reason of falling unconscious or losing his faculties, deviates from the highway on to adjoining premises and falls into an excavation or pond immediately adjacent to the highway, negligently maintained by the owner of the land, and is injured, he is not barred of recovery by reason of his unconscious condition, where he is otherwise not negligent, unless his unconscious condition constitutes negligence proximately causing the injury. It seems from the authorities that the fact that a person while operating an automobile along a public highway is asleep is prima facie evidence of negligence. This is true notwithstanding the condition may have come upon him suddenly and involuntarily. It appears from the first count of the petition that the automobile which the plaintiff's son was driving left the road and went into the lake or pond of the defendant because the plain-

tiff's son had suddenly and involuntarily fallen asleep. In the absence of other allegations as to the facts and circumstances surrounding the condition of the plaintiff's son as being asleep, it appears that the plaintiff's son's condition in operating the automobile while asleep was negligence on his part proximately causing his injury. I therefore agree with my colleagues in the conclusion that count 1 of the petition fails to set out a cause of action, in that it appears that the negligence of the plaintiff's son proximately caused the injuries complained of.

In count 2 of the petition it was alleged that the course which the auomobile took into the lake was caused by "an uncontrollable and unanticipated attack of some illness which caused the plaintiff's son to lose consciousness." In count 3 it was alleged that the course that the automobile took into the lake was caused by the plaintiff's son "inadvertently and accidentally losing control of such of his faculties as are needed to drive an automobile safely along such roadway." It clearly appears from these allegations in counts 2 and 3 that the condition of the plaintiff's son which caused the automobile to run off the road into the lake was a condition of unconsciousness which was unanticipated and which came about entirely inadvertently on his part and was entirely beyond his control. Certainly such a condition can not be counted against him as negligence as a matter of law. I am therefore of the opinion that it does not appear from the second and third counts of the petition that the plaintiff was barred of a recovery by the negligence of her son, but that it appears from the allegations in counts 2 and 3 of the petition that her son's death was proximately caused by the negligence of the defendant.

It appears from the fourth count of the petition that the plaintiff's son at the time the automobile which he was driving ran off the road was in the possession of his faculties, but that by reason of the described condition of the road and the adjoining land he was deceived as to the course of the road, and for that reason he drove the automobile off the road into the lake or pond of the defendant immediately abutting the road. This, it seems, was an unintentional, inadvertent, and accidental deviation, without negligence on his part, by the plaintiff's son when traveling along the road. I am therefore of the opinion that it does not appear from the fourth count of the petition that the plaintiff was barred of

a recovery by the negligence of her son, but that it appears from the allegations in count 4 that her son's death was proximately caused by the negligence of the defendant. I therefore can not concur in the judgment of my colleagues that the petition in all four counts failed to set out a cause of action. I dissent from the judgment of reversal in so far as it applies to the second, third, and fourth counts of the petition. I concur in the judgment of reversal as applied to the first count of the petition.