29380. STALLINGS *v.* GEORGIA POWER COMPANY.

436

*Maddox & Griffin,* for plaintiff.

*Barry Wright, Jack Rogers,* for defendant.

MACINTYRE, J. The plaintiff seems to rely on the principal stated in the first two paragraphs of 5 Blashfield's Auto Law, 424, § 3279, as follows: "In building its power line along the edge of a public highway, a light and power company owes a duty to build it in such a manner that it will not be a menace to those having occasion to use the highway, and it must anticipate such use of the way as will probably occur and provide against such accidents as may be reasonably anticipated from colliding with its poles. If the poles are placed and maintained with due regard for public safety along the highway, they do not constitute an unlawful obstruction, but, where they are so erected as to interfere with safe use of the highway, they do constitute such an obstruction as will render the company liable, and the fact that the municipal authorities have passed regulations with respect to the location of the poles does not establish their safety nor preclude a finding of negligence in their location." The following quoted paragraph is also relied on by the plaintiff, and is also a part of § 3279, supra, which section is a discussion of poles erected so as to interfere with the safe use of the highway. In this paragraph Blashfield says: "But the question of negligence in locating poles within a certain distance of the traveled portion of the roadway is generally one for the jury."

In using the words "certain distance" the author is referring in general terms to a general principle or rule, and not to a particular case or any exception to the general rule. The words "certain distance" do not refer to any distance, however far away, or even to every pole located on the right of way. The pole might be located on the unimproved and untraveled portion of the right of way, at a sufficient distance and in such a place that fair-minded men might draw but one conclusion, which is that the pole would not interfere with the safe use of the highway. The words "certain distance" in this section, as applied to the location of poles relatively to the traveled portion of the roadway, refer to places sufficiently close,

or so located, that at least fair-minded men might reasonably draw conclusions from facts that they interfered with the safe use of the highway for travel, even though other fair-minded men might draw a contrary conclusion. This general rule of Blashfield is not intended to conflict with the well-established rule that when the facts are undisputed and are susceptible of but one inference, the question is one of law. It might be noted in another paragraph of § 3279, supra, that Blashfield says: "In no case does liability attach for injuries to motorists unless the negligence claimed is the proximate cause of the injury." In the footnote, as authority supporting his statement, he cites Wyatt v. Chesapeake & Potomac Tel. Co., 158 Va. 470 (163 S. E. 370, 82 A. L. R. 386), in which the facts were as follows: The road was thirty feet wide with pavement sixteen feet wide in the center, from which a shoulder four feet three inches wide sloped to a ditch two feet wide at the top, one foot deep, measured from the pavement, and nine inches deep measured from the shoulder. On the other side of the ditch was an embankment about five inches in height which was probably formed by dirt from the ditch. It was seven feet from the pavement to the outer edge of the roadway, and the pole, ten inches in diameter, stood on the line of the outer edge and projected nine inches into the right of way; that is, nine inches on the shoulder and across the ditch. The court in that case said: "From whatever be the angle of approach, no one could in reason have anticipated that it would be struck by an automobile passing along the highway." The court held that the pole was not the proximate cause of the injury.

In the instant case it was alleged that the pavement was eighteen feet wide with a five-foot shoulder extending from the edge thereof. The pole was located at a point three feet beyond the highway embankment or "fill," which was three feet from the outer edge of the shoulder, making a total distance of eight feet from the outer edge of the pavement, and at least seventeen feet from the place where the deceased was riding in the automobile if the driver had been on the right side of the road in the direction in which he was traveling. The roadway lies in the direction of east and west, and in going west makes a turn of about fifty degrees toward the north. The pole was located at the approximate apex of the curve on the western side of the roadway. It was alleged also that approximately fifteen feet from the ground crossarms were attached to the

pole, and strung thereto were eight to ten wires for the transmission of electric current; that approximately fifteen feet above the aforementioned wires was another crossarm strung with three high-tension wires carrying a high, dangerous, and death-dealing current of 2300 volts or other large, dangerous, and death-dealing amount; that the blowout caused the car to swerve and skid to the left and into the pole, breaking the pole, which fell and caused the high-tension wires to become entangled with the other wires; that the automobile went over a slight embankment on the south side of the road; that the pole was in a rotten and weakened condition and no automatic switch or cut-off operated to cut off the electric current; and that the petitioner's husband, a guest in the automobile, in getting out of the automobile and climbing the embankment, came in contact with the wires which had become charged with high and deadly voltage and was killed by being electrocuted and burned to death.

Of course, it is true in the instant case that but for the location of this pole there would have been no electrocution, but the location on the right of way and the happening of the disaster leave the subject of causal connection still open. In a negligence case the liability of the wrongdoer is restricted to the reasonable and the probable. In Bird v. St. Paul Fire & Marine Ins. Co., 224 N. Y. 47, 53 (120 N. E. 86), Judge Cardozo said: "The wrongdoer may be charged with those consequences and those only within the range of prudent foresight." One's responsibility for negligence must end somewhere. The plaintiff can not always recover for the negligence of another. The law always refers the injury to the proximate, not to the remote cause.

"If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote." Fowlkes v. Southern R. Co., 96 Va. 742, 745 (32 S. E. 464). "But it is generally held, that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the at-

tending circumstances." Milwaukee & St. Paul R. Co. *v.* Kellogg, 94 U. S. 469 (24 L. ed. 256); 82 A. L. R. 391. "It has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again. A man's responsibility for his negligence must end somewhere. As has been well said: 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.'" 22 R. C. L. 124. "The substance of it all, stated and restated in various ways, is that negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable. One is not charged with foreseeing that which could not be expected to happen." 82 A. L. R. 392. Negligence, no matter in what it consists, can not create a right of action unless it is the proximate cause of the injury complained of.

It is the general rule that what is the proximate cause of an injury is ordinarily a question for the jury. The court instructs them in what the law requires to constitute it, and the jury applies the law to the facts. It is not a question of science or of legal knowledge. Proximate cause is to be determined as a fact, in view of the circumstances attending it. And while ordinarily the question of proximate cause is one for the jury, yet when the facts alleged in the petition, which are for the purposes of a general demurrer admitted to be true, are such that a jury can reasonably draw but one conclusion if the facts alleged are proved, that conclusion being that the acts of the defendant were not the proximate cause of the injury, it is not error to sustain the general demurrer. In other words, where fair-minded men may differ as to the facts alleged if proved, or as to the conclusions to be deduced therefrom, the case is for the jury; otherwise it is for the court. This case

comes under the latter classification. The burden was properly assumed by the court, and it did not err in dismissing the petition on general demurrer.

In the instant case the driver of the guest car, assuming that he was driving on the proper side of the eighteen-foot paved highway when the blowout occurred, crossed over at least nine feet of paved highway and five feet of dirt shoulder, went off an embankment and struck a pole three feet beyond the shoulder or embankment, thus traveling more than seventeen feet from the point where the blowout occurred before striking the pole. The pole, which was alleged to be the proximate cause of the injury, was located on an unimproved part of the right of way of the highway, which we do not think could reasonably be expected to be used by any one traveling the highway. From whatever angle we may approach the subject we do not think any one could have reasonably anticipated that the pole in question would be struck by an automobile passing along the highway. This seems to have been the judgment of the trial court when it sustained the demurrer, and it is supported by *Postal Telegraph-Cable Co.* v. *Kelly,* 134 *Ga.* 218 (67 S. E. 803) ; *Higginbotham* v. *Rome Railway & Light Co.,* 23 *Ga. App.* 753 (99 S. E. 638) ; *Tidwell* v. *Georgia Power Co.,* 60 *Ga. App.* 38 (2 S. E. 2d, 713) ; Lim Ben *v.* Pacific Gas & Electric Co., 101 Cal. App. 174 (281 Pac. 634).

The defendant can not be held liable because it was not bound to foresee and provide against the unusual and improbable thing that occurred. The allegations of the petition did not set out facts which, if proved, would show that the placement and maintenance of the pole were the proximate cause of the injury. The general demurrer was properly sustained.

*Judgment affirmed. Sutton and Gardner, JJ., concur. Broyles, C. J., disqualified.*