32233.   LYONS *v.* GEORGIA POWER COMPANY *et al.*

Decided January 14, 1949.

*Hammond, Kennedy & Sanders,* for plaintiff.

*Fulcher & Fulcher, Hull, Willingham, Towill & Norman,* for defendants.

Parker, J.   This was a suit brought by Marjorie Lyons against Georgia Power Company, Grady Carpenter and Ernest T. Reid, for damages for the death of her minor son, Cleveland Horton, upon whom she was dependent, who contributed to her support and who died without leaving a widow or child.

Stated briefly, the allegations made by the plaintiff in her amended petition which are now material are:   that on March 8, 1948, about 9:15 o'clock, p. m., her son was riding as an invited guest in an automobile owned by Grady Carpenter and driven by Ernest T. Reid, in the discharge of his duties as an employee of Grady Carpenter, along Mt. Auburn Street, which runs in

an easterly and westerly direction in Augusta, Georgia; that said street was rough, muddy and rutted, with many large and deep holes partially filled with mud and water in and about its traveled portion, and was practically impassable to motor vehicular traffic; that the Georgia Power Company had a power pole erected on the southern portion of said street which was seven feet north from the north property line and seven feet north of the dividing property line of 2410 and 2412 Mt. Auburn Street, and which was situated on the edge of the traveled portion of said street and was out of line with the other power poles in that block in that the other poles were set back seven feet from the traveled portion of the street; that Mt. Auburn Street was 30 feet in width at the point where the pole was erected, with only 10 feet of the 30 capable of being traveled by vehicular traffic; that Ernest T. Reid drove said automobile over said street at 40 miles per hour, a high and dangerous rate of speed, deliberately ignoring its obviously dangerous condition, and in swerving, twisting and turning to avoid the more dangerous holes, and in utter and reckless disregard of human life and safety to others, he suddenly without warning pulled, turned and twisted said automobile into said power pole striking it with the full impact and speed of the automobile; that as a result of said impact a transformer of the power company affixed to the pole fell on the automobile striking and crushing the skull of the plaintiff's son and causing his death; that said transformer was insecurely affixed to said pole in that the attachments designed to fasten, secure and hold it to the pole were rusty, worn, weak, defective and insufficient.

The power company was charged with negligence in placing said pole on the traveled portion of the very narrow street where it was obviously dangerous to traffic and pedestrians, and failing to anticipate and make provisions against accidents from collisions with its poles erected so close to the traveled portion of the street, and in erecting said pole on the edge of the traveled portion of the ·street so that it interfered with the safe use of the street; in placing the transformer in a public street in disregard of the safety of users of the street, in failing to securely affix said transformer to said power pole so as to prevent it from dislodging and falling upon users of the street, in permitting the attachments on the transformer to become weak with rust and

wear and creating a hazard to the traveling public, in failing to make periodic inspections of the power pole and the transformer, and in failing to anticipate a collision with the power pole which would dislodge the transformer when it was obvious that the pole was at a place where such an occurrence might reasonably happen.

The power company demurred generally to the petition on the grounds that it set out no cause of action against it, and showed that its alleged negligent acts had no causal connection with the injuries and damages complained of, and showed that the alleged injuries and damages complained of were proximately caused by the alleged negligence of the other defendants named in the suit. The trial court sustained the demurrer and dismissed the case as to the power company. The plaintiff excepted to that ruling.

The plaintiff contends that the doctrine of concurrent negligence was presented under the allegations of her petition. "It is a well-settled principle of law that where concurrent causes operate directly in bringing about an injury, there can be a recovery against one or all of the responsible parties. The mere fact that the injury would not have been sustained had only one of the acts of negligence occurred will not of itself operate to define and limit the other act as constituting the proximate cause; for if all acts of negligence contributed directly and concurrently in bringing about the injury, they together constitute the proximate cause. *Barrett* v. *Savannah,* 9 *Ga. App.* 642 (72 S. E. 49); *Bonner* v. *Standard Oil Co.,* 22 *Ga. App.* 532 (96 S. E. 573); *Georgia Ry. &c. Co.* v. *Ryan,* 24 *Ga. App.* 288 (100 S. E. 713); *Spencer* v. *Peace,* 42 *Ga. App.* 516(2) (156 S. E. 729)." *Tallman* v. *Green,* 74 *Ga. App.* 731, 734 (41 S. E. 2d, 339). See also *Nixon* v. *Williams,* 25 *Ga. App.* 594 (103 S. E. 880), *Adams* v. *Jackson,* 45 *Ga. App.* 860 (166 S. E. 258), *Chandler* v. *Brittain,* 48 *Ga. App.* 361 (172 S. E. 745), and *Callahan* v. *Cofield,* 61 *Ga. App.* 780 (7 S. E. 2d, 592). While questions of concurrent negligence and proximate cause are ordinarily for the jury, where it clearly appears from the petition that the negligence charged against a particular defendant was not the proximate and effective cause of the injury the court may so determine upon a general demurrer. *Martin* v. *McAfee & Co.,* 31 *Ga. App.* 690 (122 S. E. 71); *Southern Ry. Co.* v. *Slaton,* 41 *Ga. App.*

759(3) (154 S. E. 718). The plaintiff cites Clayburn *v.* Tennessee Electric Power Co., 20 Tenn. App. 574 (101 S. W. 2d, 492), holding that, "Generally, public utility company lawfully maintaining pole in or near public highway is not liable for damages resulting from vehicle striking pole, unless pole is erected on traveled portion of highway or in such close proximity thereto as to constitute obstruction dangerous to any one properly using highway," and Jafek *v.* Public Service Co. of Oklahoma, 183 Okla. 32 (79 Pac. 2d, 813), which holds that "A utility company is not liable for negligence in erection or maintenance of light pole upon highway unless it is shown that pole allegedly causing injuries was maintained upon or so near highway as to interfere with or obstruct ordinary use of highway by traveling public."

It does not appear clearly from the petition that the pole of the defendant was erected and maintained on a traveled portion of the street or highway, or in such close proximity thereto as to constitute an obstruction dangerous to one *properly* using the highway, or that it was so near the highway as to interfere with or obstruct the *ordinary* use of the highway by the traveling public. The petition charged as an act of negligence the placing of said pole on the traveled portion of said street, in a position where it was obviously dangerous to passing traffic and pedestrians. But other paragraphs alleged that the said pole was a menace because it was erected "so close to the traveled portion of said street," and that the power company was negligent "in erecting the said pole on the edge of the traveled portion of said street." The street was 30 feet in width at the point where the pole was erected, but only 10 feet of the 30 feet was capable of being traveled over by vehicular traffic. The pole was seven feet from the property line on the south side of the street, but its distance from the traveled part of the street is not alleged and does not appear. The indefinite location of the pole, with reference to the traveled portion of the street, must be considered in connection with the other allegations of the petition. They show that the street was rough and muddy with ruts and numerous large and deep holes therein, and was practically impassable to motor vehicular traffic, and that the driver of the car was running it over said street at night at 40 miles per hour, deliberately ignoring the obviously dangerous condition of the

street, and that in swerving, twisting and turning the automobile, attempting to avoid the more dangerous holes, he suddenly pulled, turned and twisted the automobile into the power pole, striking it with the full impact and speed of the car. Under these circumstances as presented by the petition it seems clear to us that the sole proximate cause of the injury resulting in the death of the plaintiff's son was the conduct of the driver of the car, and not the fact that a transformer attached to the pole was shaken loose and fell on the automobile from the terrific impact in striking the pole.

If it be conceded that the transformer was inadequately affixed to the pole as alleged in the petition, and that this was negligence on the part of the power company, it does not follow that the intervening act of the driver of the car was such that its proper or natural consequences could reasonably have been anticipated or foreseen by the power company. We think that the causal connection between any negligence of this defendant and the injuries was broken by the intervening act, and that this defendant would not be responsible for the consequences resulting therefrom. The act of driving the automobile into the pole at a high rate of speed was not a natural consequence which followed the original act of the defendant complained of, in the usual, ordinary and experienced course of events; but the occurrence was more in the nature of an extraordinary coincidence or conjunction of circumstances. "It is not intervening *consequences*, but intervening *causes* which relieve." *Southern Ry. Co.* v. *Webb*, 116 *Ga.* 152, 156 (42 S. E. 395, 59 L. R. A. 109). "The true rule seems to be that in determining the proximate cause the injury must be the natural and probable consequence of the negligent act complained of, and such a consequence as under the circumstances of the case might and ought to have been foreseen by the wrongdoer as likely to flow from his act." *Wright* v. *Southern Ry. Co.*, 62 *Ga. App.* 316, 320 (7 S. E. 2d, 793). Applying this rule to the instant case we do not think that the negligence charged to the defendant here involved was the proximate cause of the death of the plaintiff's son.

This conclusion is supported by the decisions in the following cases cited by the defendant. *City Council of Augusta* v. *Reynolds*, 122 *Ga.* 754 (50 S. E. 998, 69 L. R. A. 564, 106 Am. St. R.

147); *South Georgia Power Co.* v. *Smith*, 42 *Ga. App.* 100 (155 S. E. 80); *Atlantic Coast Line R. Co.* v. *Daniels*, 8 *Ga. App.* 775 (70 S. E. 203); *Stallings* v. *Georgia Power Co.*, 67 *Ga. App.* 435 (20 S. E. 2d, 776); *Eberhart* v. *Seaboard Air Line Ry.*, 34 *Ga. App.* 49 (129 S. E. 2); *McMahen* v. *N. C. & St. L. Ry. Co.*, 68 *Ga. App.* 397 (23 S. E. 2d, 81).

The court did not err in sustaining the general demurrer of the Georgia Power Company, and in dismissing it as a party defendant.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Sutton, C. J., and Gardner, J., concur, MacIntyre, P. J., concurs specially. Felton and Townsend, JJ., dissent.*

MacIntyre, P. J., concurring specially. Ordinarily it is the duty of the city, and of public utilities to which the city grants franchises, to keep streets and highways safe for travel in a manner which accords with the requirements of ordinary care and prudence; however, I do not think that they are bound to keep the full width of every street safe for vehicular travel, and ordinarily it is sufficient to keep so much of the streets safe for that purpose as is designated and necessary for travel. Within the limits of a municipality if there should be placed trees or poles, hitching posts, stepping stones, fire hydrants, or poles for electric wires, in a space between the part of the street designated for vehicular travel and the sidewalk for pedestrians; and if a runaway automobile or an automobile driven in a grossly negligent manner should run into an electric pole three feet outside the part of the street set apart for vehicular travel and cause injury to a guest in the automobile, the mere placing of the pole *in plain view* of the traveling public in such location, not being on the part of the street designated for vehicular travel, could not be said to be the proximate cause of the injury. In other circumstances, however, it may be a question for the jury to say whether the pole is so placed as to be incommodious to prudent travel by the public.

The street was alleged to be thirty feet wide and that ten feet of it was set apart for vehicular travel; that the pole was placed seven feet from the property line of the adjacent prop-

erty owner; construing the petition most strongly against the pleader, the pole was three feet outside the part of the street set apart for vehicular travel. There are no other allegations sufficient to show that the mere placement of the pole itself was not in the exercise of due care.

The case is an action to recover damages for the death of a guest of the driver who drove the automobile over and beyond the part of the street designated for vehicular travel and against an electric pole placed and maintained by the defendant power company, presumptively with the permission of the municipality, on the part of the street not maintained for vehicular purposes and, so far as appears from the petition, in clear view of the traveling public. Under these conditions the mere placing of the pole itself in this location can not be held to have been the proximate cause of the injuries sustained by the deceased.

It is alleged, however, that the cause of the injuries to the deceased was the negligent attaching of a heavy transformer to the pole by the power company, which transformer fell, inflicting the injuries resulting in the death. It is also alleged in the plaintiff's petition that the portion of the street in question which was designated for vehicular travel was only ten feet wide, that in this portion of the street there were numerous deep holes, filled with mud and water, that the street was rough and rutted, and that it was practically impassable to vehicular traffic. It was further alleged that the driver was directing his automobile over this street at the dangerous and reckless speed of forty miles per hour, weaving in and out to avoid the holes.

The plaintiff in error quotes in her brief the case of *Bozeman* v. *Blue's Truck Line*, 62 *Ga. App.* 7, 8 (7 S. E. 2d, 412), where it is said: "In a situation where there is an act of negligence which is not operating and active at the time of another which follows, which latter act is caused by a breach of duty which the party guilty of the latter act of negligence owed to the injured party, the law will regard the latter act of negligence as the superseding cause, and will not look beyond it to the first act, unless the person guilty of the first act of negligence could reasonably have anticipated that the second or intervening act might, not improbably but in the natural and ordinary course of things, follow his act of negligence, or, 'if the misconduct is

of such character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause.' " This rule is stated in other language as follows: " 'If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote.' " *Stallings* v. *Georgia Power Co.*, 67 *Ga. App.* 435, 438, 439 (20 S. E. 2d, 776). In the same case, this court said on page 439: " 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.' " "The defendant's duty was simply to provide for the usual and ordinary risks of travel." *Georgia Power Co.* v. *Murray*, 57 *Ga. App.* 141, 150 (194 S. E. 403).

Applying these rules to the facts alleged, I do not think that the striking of the pole at the dangerous speed of forty miles an hour was an occurrence in the natural and ordinary course of things within the bounds of reasonable foreseeability. One's responsibility for negligence must end somewhere. The plaintiff can not always recover for the negligence of another. The law refers the injury to the proximate, not the remote cause. I do not think that ordinary care and prudence require the power company to secure its transformers to its poles in municipalities on streets of the character here alleged so as to withstand the terrific impact of an automobile traveling at a speed of forty miles per hour. In other words, the duty owed the plaintiff by the power company was to provide for the usual and ordinary risks of travel, and travel at forty miles per hour over this street was not a usual and ordinary risk of travel.

I think that the proximate cause of the death of the guest was not the negligence of the power company if any, but resulted only through or by means of some intervening cause or causes from which cause or causes the injury followed as a direct and intermediate consequence and the law will refer the

damage to the last proximate cause or causes and refuse to trace it to the remote negligence, if any, of the power company.

The defendant can not be held liable here where it was under no duty to foresee and provide against the unusual and improbable thing that occurred. The allegations of the petition did not set forth facts which, if proved, would show that the placement and maintenance of the pole caused the injury, and the general demurrer was properly sustained.

FELTON and TOWNSEND, JJ., dissenting. We think that it was a jury question whether the Georgia Power Company was guilty of negligence as to the deceased in placing the pole where it did with the insecurely attached transformer thereon so as to render the Power Company liable for damages. If it was negligent as to the deceased, it would be liable as being responsible for one of the concurrent proximate causes of the death. If it was not negligent, its acts would not render it liable in damages even if its acts contributed to the death. The question whether the Power Company was negligent as to the deceased depends on whether it should have anticipated the illegal and negligent use of the street involved. We think that this is a jury question under the allegations of the petition. See *Bozeman* v. *Blue's Truck Line*, 62 *Ga. App.* 7 (supra) ; 1 Cooley on Torts, 132, 135; Restatement of Law of Torts, Ch. 12, p. 817; Ch. 16, p. 1202; *Southern Railway Co.* v. *Webb*, 116 *Ga.* 152 (42 S. E. 395, 59 L. R. A. 109).