## 58067. COLLINS v. ALTAMAHA ELECTRIC MEMBERSHIP CORPORATION et al.
## 58068. STANLEY v. ALTAMAHA ELECTRIC MEMBERSHIP CORPORATION et al.

SHULMAN, Judge.

In August of 1974, appellants Diane C. Stanley and Stephanie K. Collins suffered electrical burns when a piece of farm equipment driven by Stanley, and on which Collins was a passenger, grazed a guy wire securing appellee-Altahama EMC's utility pole, breaking the pole and causing electrified wires to fall on appellants. In appellants' subsequent actions seeking recovery for their personal injuries, summary judgments were granted in favor of appellee. We reverse.

1. Although the litigants presented evidence regarding stress load capacity and the physical condition of appellee's utility pole, the trial court found such evidence to be irrelevant for the purposes of the motions for summary judgment. Instead, the court held that appellee was absolved from legal liability because appellants' injuries were sustained as a result of a separate and independent agency beyond the control of appellee and in no way attributable to the alleged deteriorated condition of the utility pole. Our assessment of the facts of these cases leads us to a conclusion which differs from that of the trial court.

The utility pole involved in these cases was installed in 1947 on property used for farming operations. From the time of the installation of the pole until 1971, certain modifications were made to the electrical equipment affixed to the pole. In 1949, the electric line was converted from single phase to two phase; in 1962, the pole was modified to accommodate a three phase line; in 1971, transformer and line services were changed. During the period from 1947 to 1974, the farming operations had grown increasingly complex. In 1954, a house and farm operations center was built near the pole. By 1974, the farm included approximately 1200—1400 acres under cultivation.

A. A power company is charged with the duty of exercising ordinary care in the construction and

maintenance of its wires, poles, transformers and equipment. Ordinary care is that reasonable care and caution which an ordinary cautious and prudent person would exercise under the same or similar conditions. *Jackson v. Goldin,* 26 Ga. App. 283 (106 SE 12). The scope of this duty is dependent on the attendant circumstances. *Clinton v. Gunn-Willis Lumber Co.,* 77 Ga. App. 643 (49 SE2d 143).

B. "Under the allegations of the [complaint, appellants were rightfully on the property engaging in ordinary farm operations and] the negligence of the defendant [in failing to properly construct, inspect and maintain its electrical wires and utility poles] was one 'cause in fact' of the [appellants' injuries].

"In such a situation, '[t]he causal connection between an original act of negligence and injury to another is not broken by the "intervening" act . . . if the nature of such intervening act was such that it could reasonably have been anticipated or foreseen by the original wrongdoer.' [Cit.] 'The original act of negligence may be passive, that is, harmless unless something further occurs but capable of being made dangerous by the operation of some new force, as occurred in this case. Under such conditions, the fact that an intervening act . . . is itself negligent, and acts upon the original passive negligence so that injury occurs which otherwise would not have occurred, does not necessarily operate to make the second act of negligence . . . the sole proximate cause of injury and thus insulate the original wrongdoer from liability . . . where such conditions occur, it is sufficient if the defendant, in ordinary prudence, might have foreseen that some injury would result from his act, but it is not necessary that he should have anticipated the particular consequences which ensued.' [Cit.]" *Southern Bell Tel. &c. Co. v. Whiddon,* 108 Ga. App. 106, 108-109 (132 SE2d 237).

"[T]he foreseeability of [an intervening agency] is for the jury where reasonable minds might differ." Id., p. 106.

C. Under the circumstances of this case, we refuse to hold that appellant-Stanley's act was unforeseeable as a matter of law. A jury question was presented as to whether or not the defendant-power company should have anticipated that someone in the ordinary and usual

course of farm operations, either lawfully or negligently, might strike a guy wire securing its alleged negligently maintained utility pole. Id. See *Lenderman v. Haynie,* 89 Ga. App. 513 (2) (80 SE2d 216). Cf. *Clinton v. Gunn-Willis Lumber Co.,* supra, recognizing the duty of a power company to exercise that degree of care which is commensurate with changing conditions.

2. Cases cited by appellee are inapposite. This court recognizes that a power company maintaining a rotten pole located well off the traveled portion of a highway, safe from ordinary danger of collision from vehicles on the highway, may be legally not accountable for injuries sustained when a vehicle leaves the road and strikes the pole. See *Stallings v. Ga. Power Co.,* 67 Ga. App. 435 (4) (20 SE2d 776). We also recognize that if the breaking of a negligently maintained pole was caused by unusual circumstances over which a power company has no control and concerning which the company cannot be called upon to anticipate or take extraordinary precautions to insure against, then no liability attaches. See, e.g., *Postal Telegraph-Cable Co. v. Kelly,* 134 Ga. 218 (67 SE 803); *Tidwell v. Ga. Power Co.,* 60 Ga. App. 38 (2 SE2d 713), involving the felling of trees on power lines; and *Lyons v. Ga. Power Co.,* 78 Ga. App. 445 (51 SE2d 459), involving the collision of a recklessly driven car with a power pole. The facts of the instant case are distinguishable from the facts in these cases.

3. We are not persuaded by appellee's argument that judgment in its favor was demanded because the evidence shows that the tractor driver proximately caused the injuries by failing to exercise care for her own safety. This is properly a question for a jury. Similarly, the issue of comparative negligence remained for jury consideration.

4. Appellee, urging that *Chambers v. C. & S. Nat. Bank,* 242 Ga. 498 (249 SE2d 214), is indicative of a trend to require a movee on summary judgment to do more than merely submit an affidavit creating issues of fact in opposition to the motion, invites this court to compare the affidavits of its affiants and those of appellants' affiants concerning the condition of the pole and the cause of the break. But see *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866), s.c., 124 Ga. App. 65 (183 SE2d 78), which

is apparently in conflict with *Chambers*.

A comparison of the affidavits shows that genuine issues of material fact remain as to whether the condition of the pole was a contributing cause to the injuries sustained. This being so, we are not authorized to go further by way of qualitative comparison. See generally *McCurry v. Bailey,* 224 Ga. 318 (1) (162 SE2d 9). Any trend which would authorize the grant of summary judgment on the basis urged by appellee is contrary to law and expressly disavowed.

*Judgment reversed. Deen, C. J., concurs. Carley, J., concurs specially.*

ARGUED JULY 2, 1979 — DECIDED SEPTEMBER 25, 1979 —

*Alvin Leaphart,* for appellants.
*Charles Andrew, Jr., Hugh B. McNatt,* for appellees.

CARLEY, Judge, concurring specially.

I concur fully in the majority's reversal of the grant of summary judgment in favor of the defendant in this case and agree completely with the reasoning of the majority in Divisions 1, 2 and 3 of its opinion. I also agree with the holding of the majority in Division 4 that "we are not authorized to go further [in analyzing affidavits of respective parties] by way of qualitative comparison." However, I cannot agree totally with the majority's analysis as contained in Division 4 of the opinion.

In *Burnette Ford, Inc. v. Hayes,* 124 Ga. App. 65 (183 SE2d 78) (1971), this court relied upon the Supreme Court's answer to a certified question in that case. *Burnette Ford, Inc. v. Hayes,* 227 Ga. 551 (181 SE2d 866) (1971). By answering affirmatively this court's certified question, the Supreme Court approved the ultimate ruling of this court that all of the evidence adduced on a motion for summary judgment including the testimony of the party opposing the motion is construed most strongly against the movant. The majority perceives the Supreme Court's ruling in *Burnette Ford, Inc.* to be in conflict with the case of *Chambers v. C. & S. Nat. Bank,* 242 Ga. 498

(249 SE2d 214) (1978). I see no such conflict since I read *Chambers* as requiring a construction of a respondent's testimony against him only when it is "intentionally or deliberately self-contradictory." Furthermore, I see nothing in *Chambers* requiring or authorizing appellate qualitative comparison of opposing affidavits, which comparison the majority correctly refuses to undertake in this case. I am constrained to point out, however, that were *Chambers* and *Burnette Ford* in conflict as to a material issue before this court, I believe that we would be compelled to follow *Chambers* in view of the Supreme Court's holding in *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839) (1975). Thus if *Chambers* were to be indicative of the "trend" asserted by appellee, I do not think that this court would be authorized to disavow it.