A08A2039. MEADOWS et al. v. DIVERSE POWER, INC.
(675 SE2d 571)

JOHNSON, Presiding Judge.

On August 8, 2005, Wendy Stallman was killed and two of her children were injured after she came in direct contact with an electrified power line owned and maintained by Diverse Power, Inc. Edward Meadows, as administrator of the estate of Mrs. Stallman, and Mrs. Stallman's husband and children (collectively, "the Stallmans") sued Diverse Power, claiming that it negligently maintained and inspected the utility pole and power line at issue. The trial court granted summary judgment to Diverse Power, finding that even if Diverse Power was negligent, (i) its negligence was not the proximate cause of Mrs. Stallman's death or her children's injuries, (ii) Mrs. Stallman could have avoided harm by exercising ordinary care, and (iii) Mrs. Stallman voluntarily assumed the risk of contact with the live wire. On appeal, the Stallmans claim that the trial court erred because its findings were based on questions of fact that should have been reserved for a jury. We find no error, however, and affirm.

We review a grant of summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1] A defendant demonstrates entitlement to summary judgment by showing that the record lacks evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case.

> The defendant does not need to affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.[2]

So viewed, the evidence shows that at approximately 6:00 p.m. on August 8, 2005, 16-year-old Michael Stallman was driving a truck on Alverson Road in Troup County, with his mother and sister as

---

[1] *Argo v. Chitwood*, 282 Ga. App. 156, 157 (637 SE2d 865) (2006).

[2] (Citation and punctuation omitted.) Id.

passengers. Michael's cell phone began ringing, and the truck swerved off the roadway onto the right shoulder as either he or his sister tried to answer it. As Michael attempted to recover control of the truck, it veered across the road onto the left shoulder, moved back into the roadway, spun approximately 180 degrees, entered the right shoulder, and struck a wooden utility pole located 24 feet from the edge of the road.

The collision caused the utility pole to break, and the top portion of the pole fell to the ground. The power line did not break, however, and remained connected to the next upstream and downstream utility poles. As a result, the power line was suspended between the two adjacent poles, coming within approximately twelve inches of the ground at its lowest point.

None of the Stallmans was injured in the collision or by the falling pole. After sitting in the car for a few minutes, Mrs. Stallman's daughter, Toika, used her cell phone to report the accident to 911, and the Stallmans exited the truck. Mrs. Stallman warned her children to be careful of the power line, which was suspended approximately 15 feet from the passenger door of the truck, because "[i]t could still be live."

Toika Stallman stepped over the power line at a point where it was suspended approximately 12 inches off the ground, but when Mrs. Stallman attempted to step over the line, her leg came in contact with it and she was electrocuted. Mrs. Stallman fell to the ground with her leg caught on the line. Michael Stallman used his legs to remove his mother from the power line, and he suffered severe burns on his back, arms, and legs. Toika Stallman also received burns when she came into contact with her mother's body as she attempted to perform CPR. Mrs. Stallman was transported to West Georgia Medical Center, but she died as a result of her injuries.

1. The Stallmans first claim that the trial court erred in determining that Diverse Power was not the proximate cause of Mrs. Stallman's death and the injuries sustained by the Stallman children. We disagree.

"The proximate cause requirement constitutes a limit on legal liability; it is a policy decision that for a variety of reasons, such as an intervening act, the defendant's conduct and the appellants' [injuries] are too remote for the law to countenance recovery."[3]

> One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose

---

[3] (Citation omitted.) *Stegall v. Central Ga. Elec. Membership Corp.*, 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996).

too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen or what, as it is sometimes said, is only remotely and slightly probable. Even where [the] defendant is negligent[,] if other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote and contingent to be the basis of a recovery. The inquiry is not whether the defendant's conduct constituted a cause in fact of the injury, but rather whether the causal connection between that conduct and the injury is too remote for the law to countenance a recovery.[4]

An intervening act will break the causal connection between an initial act of negligence and an injury if the defendant, in ordinary prudence, could not have foreseen that some injury would result from its negligence.[5] While determining whether an intervening act is sufficient to cause such a break is generally a jury issue, in plain, palpable, and indisputable cases it should be determined by the court as a matter of law.[6]

We recognize that a power company is charged with the duty of exercising ordinary care in the maintenance of its power lines and utility poles.[7] However, we need not consider whether Diverse Power's maintenance of the line and pole constituted an initial act of negligence because the Stallmans have failed to produce sufficient evidence to show that any negligence on the part of Diverse Power was the proximate cause of Mrs. Stallman's death and the injuries sustained by Michael and Toika Stallman.

Even where evidence is introduced showing that a power company allowed a utility pole to become "rotten," this Court has repeatedly recognized that where the pole is "located well off the traveled portion of a highway, safe from ordinary danger of collision from vehicles on the highway, [the power company is] not accountable for injuries sustained when a vehicle leaves the road and strikes the pole."[8] While the Stallmans presented evidence of other cars striking utility poles owned by Diverse Power, as well as a report from a 1987 study of utility pole impacts, they presented no evidence suggesting that a collision with a pole located 24 feet off the roadway

---

[4] (Citations, punctuation and emphasis omitted.) *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 392-393 (4) (394 SE2d 345) (1990).

[5] *Collins v. Altamaha Elec. Membership Corp.*, 151 Ga. App. 491, 492 (1) (B) (260 SE2d 540) (1979).

[6] See *Cieplinski v. Caldwell Electrical Contractors*, 280 Ga. App. 267, 275 (633 SE2d 646) (2006).

[7] *Collins*, supra at 491-492 (1) (A).

[8] Id. at 493 (2).

was anything other than unusual and improbable.[9]

In addition, the Stallmans also failed to present evidence indicating that Diverse Power should have foreseen the actions taken by Mrs. Stallman that resulted in her death and the injuries to her children. It is undisputed that none of the Stallmans was injured in the collision with the utility pole or when a portion of the utility pole fell to the ground. Instead, the injuries resulted after Mrs. Stallman chose to step over the electrified line where it was suspended approximately 12 inches off the ground.

Mrs. Stallman made this choice even though she was fully aware that the power line might be "live." She also made this choice even though she could have either waited in the truck for emergency assistance to arrive (based on her daughter's earlier contact with a 911 operator), or proceeded along a route that did not require her to step over the power line. Mrs. Stallman "went into the situation with her eyes open. She saw the whole picture; she had the opportunity to measure the risks, if any, and was under no compulsion [to attempt a risky act]."[10]

Given the unusual and improbable action taken by Mrs. Stallman, as well as the unusual and improbable collision between the truck and the utility pole located 24 feet off the roadway, the trial court did not err in determining that any negligent maintenance or inspection of the utility pole or power line was not the proximate cause of Mrs. Stallman's death or the injuries sustained by Michael and Toika Stallman.

2. In view of the above holding, we need not address the Stallmans' assertions that the trial court erred in granting summary judgment based on the alternative theories that Mrs. Stallman could have avoided harm by exercising ordinary care and that Mrs. Stallman voluntarily assumed the risk of contact with the power line.[11]

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED MARCH 17, 2009 — ▮▮▮▮▮

*Cooper, Jones & Cooper, Lance A. Cooper, Rufus Smith, Jr., Patrick A. Dawson*, for appellants.
*McNatt, Greene & Peterson, Hugh B. McNatt, Willis & McKen-*

---

[9] See *Stallings v. Ga. Power Co.*, 67 Ga. App. 435, 440 (20 SE2d 776) (1942).

[10] (Punctuation omitted.) *Hackel v. Bartell*, 207 Ga. App. 563, 564 (1) (428 SE2d 584) (1993) (reversing denial of summary judgment where plaintiff's intervening negligence was the proximate cause of her own injury).

[11] *Stegall*, supra at 191 (2).

*zie, Dewey R. McKenzie, Jr., Balch & Bingham, Malissa Kaufold-Wiggins*, for appellee.