29591. McMAHEN *v.* NASHVILLE, CHATTANOOGA AND SAINT LOUIS RAILWAY COMPANY *et al.*

DECIDED NOVEMBER 21, 1942.

*M. G. Hicks, Lamar Camp, James Maddox,* for plaintiff.

*Wright & Willingham, Lanham & Parker, G. W. Taylor,* for defendants.

SUTTON, J. Mrs. Lillie McMahen brought suit against the Nashville, Chattanooga & St. Louis Railway Company and the City of Rome to recover damages in the sum of $10,000, the petition alleging substantially as follows: The railway company owns and maintains a railroad track right of way in the City of Rome, running in a general northeasterly and southwesterly direction. Fourth Avenue in said city intersects the right of way and ends at East Fifth Street which immediately joins the right of way of the railway company, and runs in a general easterly and westerly direction and the east end thereof is the right of way of the railway company. East Fifth Street in said city runs in a general northerly and southerly direction along the west line of the right of way and intersects Fourth Avenue. At the intersection, and on the right of way and extending partly into the intersection, is a

large hole, approximately 15 to 20 feet long, 10 to 12 feet wide, and approximately 5 to 6 feet deep. At this place there had been erected a barrier or guard rail, consisting of two small wooden posts approximately three inches in diameter, put in the ground right on the edge of the hole, and two planks approximately one inch thick and six inches wide had been nailed to said posts and the posts were approximately 10 to 15 feet apart. The barrier had been there for such a period of time that the posts had rotted and were insecure, and one of the planks had become detached from the posts and was lying on the ground, and the barrier was not sufficiently strong to stop the impact of an automobile or other vehicle which might have been driven or skidded into the same or to impede its progress. On the day of the acts complained of, and immediately before, there had been rain, and there were water, mud, and debris accumulated at the intersection of East Fifth Street and Fourth Avenue. The said intersection is at the foot of a hill and is flat, and when it rains water, mud, and debris accumulate at said place, and had been doing so since the opening and construction of East Fifth Street and for such a period of time that the city knew, or in the exercise of ordinary care should have known, that the described condition existed at the intersection each time it rained. About 3:30 p. m. on December 27, 1940, the plaintiff was riding as a guest in an automobile operated by Mrs. J. F. Kelly and going in an easterly direction down Fourth Avenue and down the hill to the intersection and towards the right of way of the railway company, the automobile being operated at approximately twelve miles an hour. When the automobile reached the bottom of the hill at the end of Fourth Avenue and the intersection at East Fifth Street the driver attempted to turn in a southerly direction on East Fifth Street, and in doing so her automobile skidded and slipped on said street in an easterly direction and into the hole hereinbefore described. The automobile was being operated only at a rate of speed approximately ten to twelve miles an hour, and the said water, mud, and debris on the street caused the automobile to skid and to slide into the hole. It struck the barrier and the barrier broke, permitting the automobile and the plaintiff to fall into the hole. The plaintiff had no control over the running or operation of the automobile but was a guest therein.

The petition alleged the age of the plaintiff, her earning capacity, the extent of her injury and the expenses incurred, all of which are not necessary to the determination of the issue presented to this court. It was alleged that the concurring acts of the city and the railway company, in permitting the hole to remain as alleged on and in the right of way and the street, created a nuisance, and that the hole, which was located on the side of the street and in the right of way, was and is a dangerous place and pitfall for persons driving automobiles at said place under the conditions alleged. The fence or guard rail erected at said place was old, rotten, and insufficient in strength to prevent the automobile from slipping off of the street and into the hole, and the posts of the same would not and could not bear any considerable force or strength, and the hole had existed at this place for a long period of years and was known to the city, or by the exercise of ordinary care it should have known of the same. It was the duty of the city to erect a suitable barrier at said place to prevent automobiles or other vehicles from running, slipping, or sliding into the hole, and it was its further duty to keep and maintain a street in a reasonably safe condition for persons using the same, and not to permit such a hole to remain in the street and immediately adjacent thereto without a suitable barrier to prevent persons using the same in the usual and ordinary manner from falling into the same. It was the duty of the railway company to keep its right of way immediately contiguous and adjacent to Fourth Avenue and East Fifth Street in a reasonably safe condition, and not permit and maintain such a hole and pitfall described in said street and right of way. Allowing the hole to remain in the street and in the right of way of the railway company at said place constituted and was a nuisance, and constituted and was negligence on the part of both of the defendants. The petition also alleged service of notice on the city as required by law.

Each of the defendants filed a demurrer, general and special, to the petition. The demurrers were overruled. The City of Rome filed no exceptions pendente lite. The railway company filed such exceptions, but filed no cross-bill of exceptions.

Each of the defendants, in answer to the petition, admitted the locations of the streets and the location of the right of way of the railway company, denied the existence of the hole and its size and

location, admitted that a barrier or guard rail had been erected at the place described in the petition but denied the other allegations in respect thereto, denied the existence of water, mud, and debris at the intersection of East Fifth Street and Fourth Avenue. The city denied that the intersection is at the foot of a hill. The railway company admitted the truth of such allegation. Each alleged that for want of sufficient information it could neither admit nor deny that the plaintiff was a guest in the automobile in question, denied that the automobile skidded into the hole and denied the speed of the automobile as alleged. All allegations of negligence were denied, and both defendants denied that the hole constituted a nuisance and pitfall and that it was their duty to erect a suitable barrier at the place in question to prevent automobiles or other vehicles from running, slipping, or sliding into the hole. The answer of the railway company alleged that the plaintiff's injury was occasioned solely by the negligence of the driver of the automobile in approaching the intersection at an excessive rate of speed, in violation of an ordinance of the City of Rome, which prohibited the driving of any vehicle at a greater rate of speed than ten miles per hour at any street intersection within the city, and in operating and driving an automobile with defective brakes, and in failing to use and apply the emergency brakes of the automobile.

At the conclusion of the plaintiff's evidence upon the trial of the case the court, on motion, granted a nonsuit as to both defendants and dismissed the plaintiff's case. The exception here is to that judgment.

The duty of a municipality with respect to the maintenance of its streets and sidewalks in a safe condition for use by the public is as follows: "While municipal corporations are not liable for failure to perform, or for errors in performing, their legislative or judicial powers, they are liable 'for neglect to perform or for improper or unskilful performance of their ministerial duties.' Code, § 69-301. 'If a municipal corporation has not been negligent in constructing or repairing the same, it is not liable for injuries resulting from defects in its streets when it has no actual notice thereof, or such defect has [not] existed for a sufficient length of time for notice to be inferred.' § 69-303. . . The general rule of law is that a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for travel in the or-

dinary modes by night as well as by day; and if it fails to do so, it is liable in damages for injuries sustained in consequence. [Citing many cases.] And where the city knows or ought to know of a defect in time to repair or give warning of it, it is liable for injuries sustained because of the defect, regardless of its cause. *McFarland* v. *McCaysville, 39 Ga. App.* 739 (148 S. E. 421), and citations, supra." *City of Rome* v. *Brinkley, 54 Ga. App.* 391, 392 (187 S. E. 911). See *Mayor &c. of Buford* v. *Medley, 58 Ga. App.* 48 (197 S. E. 494); *City of Barnesville* v. *Sappington, 58 Ga. App.* 27, 28 (197 S. E. 342).

The duty of a railroad or other landowner not to maintain a dangerous excavation on its premises which are situated in close proximity to a public thoroughfare is as follows: " 'If upon the premises of an owner situated in dangerous proximity to a public thoroughfare there be an excavation, into which persons passing along the thoroughfare, in the exercise of ordinary care, might casually fall, it is the duty of the owner of the premises so to inclose the same as to afford reasonable immunity against the danger which might otherwise probably result from its existence. Whatever may be the duty of an owner of premises with reference to persons who unlawfully intrude thereon, such owner has no right to maintain upon his premises any dangerous nuisance which might imperil the lives of those persons who from lawful necessity or convenience might pass along, and by accident or some superior force, and without fault upon their part, fall or be thrown from the sidewalk or from a public thoroughfare into such excavation. A man must so guard his premises situated immediately adjacent to a public highway, as that one who of necessity deviates slightly therefrom may not be injured.' *Hutson* v. *King,* 95 *Ga.* 271 (22 S. E. 615). 'The distance from the highway to that which caused the injury will in many cases determine whether there was a duty to guard the highway. When the adjacent land is level or practically so, and that which caused the injury is so far removed that a traveler in the exercise of due care would not have been injured thereby, no duty to the traveler would arise. Where the land is precipitous, a duty to the traveler arises where under other conditions no duty would arise.' *City Council of Augusta* v. *Dozier,* 126 *Ga.* 524 (55 S. E. 234); *N., C. & St. L. Ry.* v. *Cook,* 177 *Ga.* 196, 199-201 (170 S. E. 28). If a hole on the property of

a landowner becomes perilous to travelers on a highway, it makes no difference whether it already pre-existed on the land, or whether it was created by the direct act of the landowner, for it is his duty not only not negligently to create such a danger, but not negligently to maintain it. See *So. Ry. Co.* v. *Autry,* 36 *Ga. App.* 552 (137 S. E. 414).*"   Greenfield* v. *Watson,* 54 *Ga. App.* 9, 10 (187 S. E. 183).

Notwithstanding the duty resting upon the defendants in the present case, the plaintiff would not be entitled to recover if it be shown that the proximate cause of her injury was some act for which neither of the defendants was responsible. "The proximate cause of an injury is that cause which immediately precedes and directly produces the injury, without which the injury would not have happened. . . So long and so far as an ultimate result can be traced to a first cause, though through successive stages, the responsibility rests with the one who put in operation the chain of events which caused the wrong or injury. . . The proximate cause is the dominant cause, not the one which is incidental to that cause, its mere instrument, though the latter may be nearest in place and time to the loss. . . The proximate cause of an accident is a cause without which the accident would not have occurred. . . The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation." *Eberhart* v. *S. A. L. Ry. Co.,* 34 *Ga. App.* 49, 54 (129 S. E. 2). "To entitle a party to recover damages of a railroad company on account of the negligence of its agents, it should appear that the negligence was the natural and proximate cause of the injury; for should it appear that the negligence of the railroad company would not have damaged the party complaining but for the interposition of a separate independent agency, over which the railroad company neither had nor exercised control, then the party complaining can not recover." *Perry* v. *Central Railroad,* 66 *Ga.* 746 (5). The plaintiff contends that the evidence on the trial of the case was sufficient to require its submission to the jury as to whether or not the negligence of the defendants concurred to bring about the injury. Each of the defendants contends that no negligence on its part was shown to have contributed to the injury, and that the evidence conclusively established that the proximate cause of the injury was the act of the driver of the automobile, in which the plaintiff was riding as a

guest, in letting the car get beyond control and causing it to crash into the barrier adjacent to the public thoroughfare. Upon a careful examination of the evidence, the essential portions of which we shall refer to, we think that it sustains the contentions of the defendants, and that the court did not err in granting a nonsuit as to each.

The evidence followed the allegations of the petition as to the location of the intersection of the two streets and that the plaintiff was riding in an automobile as a guest of the driver thereof, and was injured when the car ran into a hole or excavation near the public thoroughfare. It did not, however, show that the hole extended into the street. The plaintiff could not remember anything with reference to the movement of the automobile just previously to the accident. The testimony of the driver furnishes the sole information and was substantially as follows: "I have driven my automobile along East Fifth Street and turned into Fourth Avenue and also from Fourth Avenue into East Fifth Street. . . Quite frequently in going backwards and forwards from the business portion of Rome I traversed Fourth Avenue and East Fifth Street. On or about 3:30 p.m. on December 27, 1940, I was driving my automobile from the business portion of Rome along Fourth Avenue, but I think it was nearer 3 o'clock. I was going in an easterly direction on Fourth Avenue. From the time on Fourth Avenue that you reach East Third Street going easterly, you are going up hill until you get to Third Street, and then you are going down hill. From East Fourth to East Fifth there is a decided decline; at the foot of Fourth Avenue and the intersection of East Fifth street there is a big, I suppose you would call a hole. The N., C. & St. L. Railway Company's railroad bends are curved there. Fourth Avenue goes to the hole there at the intersection of East Fifth Street and Fourth Avenue. There is a hole there at the intersection of East Fifth Street and Fourth Avenue. I don't know the size of the hole; I just know it is almost as large as a small-size room, it seems to me. I knew there was a ditch along the railroad there between the road and the railroad track, but not until I had gone into the place did I know that there was a hole there that large.

"As I was approaching this place and going down the hill on East Fourth Street I was going, I presume, about twenty miles

an hour. It had been raining hard, but the rain had subsided, and it was kind of drizzling. It was just a slight, little rain, and I presume I was going about twenty miles an hour. As I approached East Fourth Street I put on my brakes, you know how you will do, just put on your brakes when you start down a hill, as I went from East Fourth Street to East Fifth Street. Just as a force of habit I always put my brakes on a little more as I go down a hill, you know you put your brakes on a little more as you go down the hill, and I started putting on my brakes about East Fourth Street and I slowed down considerably as I went on down the hill. I was intending to turn on Fourth Avenue into East Fifth Street, which would have been a right-angle turn, at the intersection there on Fourth Avenue and East Fifth Street. I can't say how fast I was going. The car started sliding, I suppose, when I was about a third of the way down the hill. It just seemed to start sliding and slipping, and I applied the brakes but there is nothing you can do when a car is sliding and slipping. It just slid on.

"As to the brakes on the car, I put them on, but they didn't go down to the floor board. I didn't push the brakes all the way down to the floor board with my foot. I had not had any trouble with my brakes before that time. When I say I started sliding, I mean skidding; that is the term. Even with that skidding and slipping it began to get faster and faster the further I went down the hill until it went into the ditch. You can't turn a car when it is skidding. I didn't notice any skim or oil or dirt or anything along there on the street. I was so excited at the time that I didn't look at the street. . . When I came to the top of the hill between East Third Street and East Fourth Street I was going twenty miles an hour, I presume. By force of habit I began to put on the brakes before I got to East Fourth Street, you know, as you come by Gordon Hight's home there, I started putting on the brakes. I did feel the brakes take effect, and I continued to apply the brakes then until I got about a third of the way between East Fourth and Fifth, and I was still applying the brakes at that time. I put on the brakes as I went down the hill, but I was sliding, and the further I went down the hill the faster I got. I could feel the brakes holding. When you apply them and you don't feel the car skid you can feel it checking the car. Up to the

time that I got a third of the way down the hill there between East Fourth and East Fifth I could feel the brakes checking the car and then I felt it sliding.

"When I started skidding or sliding there I was going straight and went to make the turn and I tried to turn the wheel, and nothing will take effect when the car is skidding. I think I tried to get it towards the middle of the street, and I'm not positive but I think it went that way, a little to the left. I thought possibly I could make the turn. I came down the hill there. It's rougher than Fourth Avenue. I was looking ahead as I first went there and saw nothing on the streets to attract my attention. Practically all morning it had rained, but it had slowed down and it was drizzling just a little bit at that particular time. I don't think the brakes gave way, because it felt like the wheels were sliding. I have been in a car when the car started skidding. It has been my experience that a car, when it starts to skidding, will turn sideways, but I never skidded coming down the hill. The car was sliding, and it seemed to gain momentum, it got faster and faster. I can't give any estimation of the speed that the car was making when it struck the barrier down there. I presume more than twenty miles an hour. I went to turn into East Fifth Street, but the steering wheel would not turn the car. I tried to turn in. . . Ordinarily, to stop that car going at twenty miles an hour I imagine would take ten to twenty feet. From East Fourth to East Fifth Street is a block, but I don't know how far it is in feet. . . I know that East Fifth Street has just been opened within the last year or two as a paved street, but [about] the time of the building of the new school. I knew that it was necessary to slow down in order to make that turn into East Fifth Street. I was always cautious about making that turn. I didn't say the hole there extended out into the street. It is not out in the street. The street goes straight, and to the best of my knowledge the hole is on the other side of the street, between the street and the railroad track. As far as I recall it, there is no hole that extends or has extended out into the street, but the hole I refer to is the hole between the street and the railroad track, and that is the hole I went into. I didn't see any mud or dirt on the street there."

While the petition alleges that in the intersection of Fourth Avenue and East Fifth Street mud and debris had been allowed

to accumulate, that the hole on the railway's right of way extended into East Fifth Street, and that the negligent maintenance of these conditions by the defendants caused the plaintiff's injury, we think the evidence wholly fails to support these allegations. The hole did not extend into the street. No part of it caused the car to be deflected against the barrier. While there was some evidence that mud had been seen at the intersection of the two streets and on one side of Fourth Street, there was no evidence that any mud or debris was in the path of the automobile in its progress towards the barrier. Admittedly the automobile was traveling on a slippery street. What caused the loss of control it is not necessary to determine. The travel was not usual and ordinary. The driver admitted that she was proceeding down the hill at twenty miles an hour at some distance from its steepest part as Fourth Street runs into East Fifth Street, and that as she approached the intersection the car went faster and faster, with the result that at the intersection she was unable to make a right turn into East Fifth Street, as was attempted, and the car was deflected into the barrier and then into the hole. The railway was under no obligation to provide a barrier that would withstand this extraordinary impact. Its duty was to guard its premises situated immediately adjacent to a public highway so that one who of necessity deviates slightly therefrom in the usual and ordinary mode of travel may not be injured. *Hutson* v. *King,* supra. Nor is the city bound to keep its streets in a condition which is safe for all travel, but only for travel in the usual and ordinary mode by day and by night. The driver of the car testified that the barrier could easily be seen. It was placed there for a warning. She had traveled the streets many times. She testified that she applied the brakes but that nevertheless the car continued on down the hill and gathered momentum as it went. She had been driving an automobile for some time. She knew the streets were slippery. Whether the brakes failed to operate when she applied them or the car, with the brakes on, "slid" down the hill, it was the driver who, in approaching the steeper part of the hill at twenty miles an hour, made it possible for the car to get beyond her control. The "runaway" car, and not the condition of the railway's premises or the city's streets, was the proximate cause of the plaintiff's injury.

It matters not that the plaintiff guest was not negligent and

that any negligence of the driver would not be imputable to her. If the proximate cause of the injury was not due to the condition in which the defendants maintained their premises, but to some other force, there can be no recovery. As was stated in *Corley* v. *Cobb County*, 21 *Ga. App.* 219, 223 (93 S. E. 1015), quoting with approval from cases in other jurisdictions: "In Thubron *v.* Dravo Contracting Co., 238 Pa. St. 443 (86 Atl. 292, 44 L. R. A. (N. S.) 699, Ann. Cas. 1914C, 252), the Pennsylvania Supreme Court said: 'We have uniformly held that dangers which a runaway horse may encounter in his erratic course are not such as the municipality is bound to provide against; its duty in this respect being measured alone by reasonable regard for the safety of the ordinary traveler, himself exercising reasonable care and prudence. Whenever in any of our cases a municipality has been held liable for damages resulting through a frightened horse, it has appeared as a fact that the horse took fright at a point on the highway where it was in unsafe condition, and the disaster followed as an immediate consequence. There is a clear distinction between cases of this character and cases like the one we are now dealing with, and nowhere is this distinction more clearly recognized and explained than in Schaeffer *v.* Jackson Tp. [150 Pa. St. 145, 24 Atl. 629, 18 L. R. A. 100, 30 Am. St. R. 792]. Heydrick, J., delivering the opinion there says: "It is a general rule as well settled as anything in the law of negligence that a man is responsible for such consequences of his fault as are natural or probable, and might therefore be seen by ordinary foresight, but if his fault happens to concur with something extraordinary, and therefore not likely to be foreseen, he will not be answerable for the extraordinary result." ' Again in Ehleiter *v.* City of Milwaukee, 121 Wis. 85 (98 N. W. 934, 66 L. R. A. 915, 105 Am. St. R. 1027, 2 Ann. Cas. 178), it was held: 'The rule was clearly established in Massachusetts and Maine that such liability of municipalities is special and statutory; that only where the defect in the highway is the sole, proximate cause of the injury is such liability imposed, and that if there occurs therewith another proximate cause, for which the municipality is not responsible, there is no liability, and that the running away of a horse is such independent cause, unless itself produced by fault of the town. The principle is also otherwise stated that by the statute municipalities are only made liable to those using the

highway in the ordinary manner for purposes of travel, and that a runaway team is not within the use.' " As was said in *Georgia Power Co.* v. *Murray*, 57 *Ga. App.* 141, 148 (194 S. E. 403), quoting with approval from a foreign jurisdiction: "As was said in City of Dallas *v.* Maxwell (Tex. Com. App.), 248 S. W. 667, 27 A. L. R. 927, 933: 'The weight of authority, which, to our mind, is in accord with sound principles, is to the effect that where the injury to the traveler results from loss of entire control and direction of an animal or machine, the occurrences fall within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable. Of course this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable.' "

We think that the action of the automobile in the present case was like that of a runaway horse, which for some unexplained reason, not from fright of anything in the roadway, gets beyond the control of its driver and causes damages to a complaining party. Such an occurrence as is presented by the evidence was not reasonably to be expected by either of the defendants. Being in the domain of the unusual and unexpected, no duty rested on either to guard against its consequences. The court did not err in granting a nonsuit as against both defendants and in dismissing the plaintiff's action. The cases cited and relied on by the plaintiff have been carefully considered but are distinguishable on their facts. What is the proximate cause of an injury for which damages are sought must be determined from the facts of each particular case, and we do not think that it would serve any useful purpose to discuss those of a kindred nature which have heretofore been before the appellate courts of this State.

*Judgment affirmed. Felton, J., concurs.*

STEPHENS, P. J., dissenting. While it does not appear from the evidence that the hole was in any part of the street as alleged in the petition, it does appear that it was so close to the street as to constitute a danger to travelers. It is inferable from the evidence that the city was negligent as alleged in the petition in not, at the place, rendering the street safe for travel. It is alleged as to the railroad that the hole was on its right of way as well as on the city street, and that the railroad was negligent in maintaining

the hole under the circumstances. While it appears from the evidence that the hole was not in the street it does appear that it was in the right of way of the railroad company and dangerously near the street. The allegation and the evidence both showed negligence on the part of the railroad. While it may be that the driver of the car in which the plaintiff was riding was negligent, it does not appear as a matter of law that such negligence was the sole proximate cause of the plaintiff's injuries from running into the hole, and that the negligence of the defendants did not contribute to such injuries. The evidence shows that the brakes of the plaintiff's car were in good shape and operated properly, that the driver was slowly going down hill approaching the vicinity of the hole, and that she skidded into the hole because of mud, etc., on the pavement. I think the court erred in granting a nonsuit as to both defendants.