57407, 57408. J. M. BEESON COMPANY v. KNOWLES (two cases).

ARGUED MARCH 7, 1979 — DECIDED APRIL 9, 1979 —
REHEARING DENIED APRIL 30, 1979.

*Swift, Currie, McGhee & Hiers, Irwin W. Stolz, Jr.,* for appellant.

*Freeman & Hawkins, Paul M. Hawkins, William Q. Bird,* for appellees.

DEEN, Chief Judge.

1. The subcontractor, Atlanta Structural Concrete, is a division of Bristol Steel & Iron Works, Inc. Four of its top level salaried employees, desirous of working additional time over the weekends, entered into an agreement with Bristol that they would perform work on weekends additional to their regular five-day work week and be paid directly for this work instead of the pay check going through A. S. C. On the other hand lesser employees used on the weekend, such as the plaintiff, apparently received extra compensation through the regular A. S. C. channels. The work was on the contract undertaken by A. S. C.; that is, erecting the concrete canopy over the loading dock.

Nothing in the record suggests that the four employees working weekends under the designation "Pat Messer Company" formed anything other than possibly a joint venture. They were paid by checks issued by A. S. C., their regular employer. Their agreement simply allowed them to work extra hours and receive extra pay with allowance being made for the use of A. S. C. equipment. They were using as auxiliary labor other regular employees of A. S. C. who were also paid additional compensation by A. S. C., and the testimony is that this name was used as a vehicle for obtaining additional compensation beyond that for the salaried five-day week, regardless of whatever bookkeeping devices were employed.

We are in no wise convinced that if A. S. C. had subcontracted the work, and if this had been in violation of its contract with the general contractor, it would provide a defense to J. M. Beeson Company. The latter had accepted construction up to the actual laying of the

concrete panels. Further, its president was aware of the persons working on the site location during the weekend and expected them to be there doing exactly what they were doing. A breach of contract between A. S. C. and J. M. Beeson Company would not ordinarily protect the latter from a tort action based on negligence in the construction which injured the plaintiff. But we need not address this issue since it is obvious that "Pat Messer Company" was only a designation for A. S. C. employees working on an A. S. C. contract with A. S. C. equipment during hours which would normally have constituted overtime. It was accordingly proper for the court to instruct the jury that they were not to be concerned with any distinction between "Pat Messer Company" and "Atlanta Structural Concrete." An employee of a subcontractor, which Knowles was, is an invitee on the premises on which he is working. *Braun v. Wright,* 100 Ga. App. 295 (1) (111 SE2d 100) (1959).

2. As to Mrs. Knowles' suit, the court charged that this plaintiff sought damages for loss of consortium which is "the exclusive right to the services of her husband and to his society, companionship and conjugal affection." The appellant avers that this is a correct definition but complains that there is no evidence relating to loss of conjugal rights. This portion of the charge does no more than state a contention of the pleader. It is not error to state the contentions of the litigants as set out in their pleadings even though some may be unsupported by sufficient evidence. *Armour & Co. v. Roberts,* 63 Ga. App. 846 (1) (12 SE2d 376) (1940).

3. The court explained the meaning and illegality of a "quotient verdict" substantially as set out in *City of Columbus v. Ogletree,* 102 Ga. 293 (8) (29 SE 749) (1897). Although the appellant enumerates as error that a charge on quotient verdicts was given, the brief concedes that it was correct as an abstract principle of law. We do not find it, as contended, misleading or liable to cloud the minds of the jury. The charge contains no harmful error.

4. The plaintiffs originally sued J. M. Beeson Company, the general contractor, and Charles Shetterly, a structural consultant for Beeson. Shetterly had examined the pillars prior to this accident and found them

out of plumb; he so informed a Mr. Demetrick, the corporation's project manager. Subsequently thereto repairs were made at the Beeson Company's order by another subcontractor, Allsouth Steel Erectors, and the repaired work was, as stated, accepted by the Beeson Company prior to the collapse of the pillars.

At a time apparently between the time of Shetterly's conversation with Demetrick and the collapse there was a conversation between Beeson, head of the J. M. Beeson Company, and Shetterly as to which Shetterly testified on cross examination by the corporate defendant that he did not discuss the building deficiencies with Beeson. He was then asked by the corporate defendant's attorney why he did not do so and replied that he had already reported it to those in authority: "I had spoken to a company official on the morning of the 7th after being asked to look at it and told him at that time that I did not consider what they had there [to be] adequate lateral bracing."

The evidence was objected to and a motion for mistrial made on the ground that Demetrick, the project manager to whom the remark was made, was dead at the time of the trial and the questioning violated the dead man's statute (Code § 38-1603 (3)) which provides that where a suit is defended by a corporation the *opposite party* may not testify *in his own behalf* to communications solely with a deceased agent of the corporation. Appellant urges that Shetterly, although a co-defendant, is also an opposite party because the Beeson corporation filed a cross claim against him.

However, Shetterly (who filed no pleadings and was in default) was not testifying in his own behalf. He was testifying under cross examination, and the question he was called upon to answer (why he did not bring the matter up with Beeson personally) became relevant for another reason; i.e., to explain his conduct. Even a conversation with a person since deceased which would otherwise be objectionable may be admitted for this purpose. Code § 38-202; *Allstate Ins. Co. v. Phoenix,* 90 Ga. App. 619 (2) (83 SE2d 335) (1954). Since the corporate defendant's attorney elicited the information it would, at most, constitute invited error. We feel that under the circumstances, however, the testimony was admissible.

The cited case of *Allstate Ins. Co. v. Christian &c. Co.,* 145 Ga. App. 126 (243 SE2d 281) (1978), although stating the general rule as to inadmissibility of testimony barred by the dead man's statute, is not controlling here for the reasons stated. It should also be noted that that case is predicated on the fact that the *only* evidence of a material fact is that rendered incompetent by death of the agent. In this case it is evident from the entire sequence of events that the Beeson Company did in fact realize there were flaws in the erection of the pillars because it called in another subcontractor to repair the work, and thereafter it was in fact inspected and accepted.

5. The remaining enumeration of error contends that the court erred in denying the motion for a directed verdict in favor of the corporate defendant. It is true that "the duty which a general contractor . . . owes the subcontractor is to exercise the care of an ordinarily prudent person to prevent him from being exposed to a hazard or hazards other than those that ordinarily attend a person's presence on premises where a building is under construction." *Batson-Cook Co. v. Shipley,* 134 Ga. App. 210, 212 (214 SE2d 176) (1975); *Tect Const. Co. v. Frymyer,* 146 Ga. App. 300 (246 SE2d 334) (1978). Whether the general contractor exercised this degree of care as to the injured employee of the subcontractor is a jury question. *Russell v. Goza,* 143 Ga. App. 455 (1) (238 SE2d 583) (1979): "Unless no other conclusion is permissible, questions of negligence are matters for jury resolution and are not ordinarily susceptible to summary adjudication."

*Judgment affirmed. McMurray, P. J., and Shulman, J., concur.*