77855. LOCKE et al. v. VONALT et al.
(377 SE2d 696)

BIRDSONG, Judge.

Appellants, William F. Locke, Scott W. Locke, and National Equipment Sales, Service & Supplies, Inc., bring this appeal from the judgment of the trial court, entered on a jury verdict, in an action for contribution from the appellees, Michael R. Vonalt and Robert E. Vonalt, by appellants. Appellants sought recovery of one-half of the amount paid by their insurer in a tort action against appellants and appellees for the wrongful deaths of Deborah Ann Britt and Chris Patsy.

Britt and Patsy died as a result of an automobile collision which occurred on the evening of June 22, 1983, involving a car driven by Scott Locke which collided with a car driven by Britt. Patsy was a passenger in Locke's automobile. As Michael Vonalt and Bobby Keen started to leave a minature golf course in Vonalt's red Chevrolet Camaro, Scott Locke and Chris Patsy drove over to them in Locke's new 280 Datsun ZX. Locke removed the T-tops from his Datsun, and Vonalt and Keene sat in the car for a few minutes before leaving, although Vonalt apparently had a 9:30 p.m. home curfew. Both cars left at approximately the same time and proceeded north on Johnson Ferry Road. At a red light, Vonalt was in the right hand lane and Locke pulled up alongside and Patsy, a close friend of Vonalt, spoke to him. Vonalt said that Patsy asked him if he wanted to do something the coming weekend and he told Patsy to give him a call. Vonalt denies that racing was mentioned. Vonalt said that he knew that Johnson Ferry merged from four lanes to two lanes just ahead and he accelerated quickly to get into the left lane. He admitted he exceeded the speed limit and drove at approximately 55 to 60 miles per hour, and crossed over the double line dividing the north and southbound lanes to get in front of the cars in front of him. He said he glanced in his rearview mirror at Locke, but "I didn't really care what he was doing. I was just going home. . . . I caught him in the rearview mirror. . . . And, by that point I couldn't see what he was

doing anymore. It was a blind curve. . . . I didn't see Scott after I rounded that corner. I don't know if he stayed in traffic or kept [going]. I don't know what he was doing."

Testimony of the other witnesses is in conflict. Kenneth Shook was driving the lead car going north when Vonalt and Locke passed him. He saw Vonalt's Camaro pass him on the left by crossing over the double line and the Camaro was about four lengths ahead of the Datsun. The Camaro stayed on the left (in the southbound lane) for several car lengths after he passed Shook. He estimated the time lapse between the Camaro and the Datsun as "[t]en seconds or less . . ." and that when the Camaro passed him they both were "[f]ifty or a hundred yards" before Johnson Ferry narrowed from four lanes to two lanes. Shook saw only one other car at that time, the one being driven by Joy Rhodes immediately behind him.

Ms. Rhodes was the second car in this group of cars when she saw headlights in her rearview mirror and heard the sound of the red Camaro passing her at a speed she estimated at "seventy to eighty-five miles per hour." At that spot, where the cars passed her, she said there was only one northbound and one southbound lane. "Shortly after I noticed that the Camaro had just passed me, I caught another light in my sideview mirror." She saw the Datsun move out of the northbound lane to pass, "[h]e hesitated. He—he would move out into the left lane, move back into the right lane, and his final entrance in the left lane he stayed there. . . . He didn't pass a line of cars and then get in and then start over. He passed all the cars at—at one passing." She was asked: ". . . [w]hen the Camaro was even with you, the Datsun was five to six cars behind, wasn't he? A. Yes, sir." To emphasize the point, counsel asked: "at the time the Camaro pulled back into the right lane, ahead of Mr. Shook, then the Datsun was four to five car lengths behind you? A. Four." At a later point she testified: "About the point he [the Camaro] went into the right lane, the 280 Z was even with my car."

Etheridge Lee Smith was proceeding southbound on Johnson Ferry just prior to this collision. He saw four cars in the northbound lane and two other cars "came up quickly behind them, a red Camaro and a silver-blue Datsun 280 Z type car. As they approached the cars, they pulled into my lane and began passing the four cars." The Datsun was "[r]ight behind" the Camaro. "They were about a car length apart . . . they both pulled out into the—into my lane of traffic, into the southbound lane together, and then they passed the—the four cars." Smith drove his truck off the road to get out of the way. The Camaro "had enough room to get back over into his lane with no trouble. . . . I was more concerned that the car behind him was gonna hit me . . . the red Camaro came by me, pulled back in his lane and proceeded on up the road. The Datsun right behind him

maneuvered fairly hard to get back into his lane. He was beside me at that point. And, as he went by he continued to go just a little bit off the road. And, at that time . . . his right wheels went off the road . . . just the right side of the car went off the road. And, he pulled it back on pretty hard and he went across the center lane [sic], out of my sight. . . . I heard tires squeeling [sic], crunching sounds; sounds of an impact. . . ." Locke's car collided with the southbound car of Deborah Ann Britt and she was killed. Locke's passenger, Patsy, was ejected through the roof of the Datsun where the T-bars had been removed, and he was killed. The suits for their wrongful deaths were settled out of court by Locke's insurer and this action is for contribution from Vonalt.

Locke did not testify at this trial. He claims amnesia for the entire period surrounding the collision and his claim is supported by his psychologist that he is amnestic for this event. Vonalt did not stop at the scene of the collision but proceeded on home after taking Keene to his house. Ms. Rhodes confirmed in her deposition testimony that at the time of the collision, the Camaro "had already cleared the hill. Question: Long gone away? Answer: Uh-huh. I really don't think he knew what was going on. . . . I really don't think he knew possibly that there had been an accident, until later on down the road when he didn't see his buddy in his rearview mirror." The jury returned a verdict for Vonalt and the Lockes bring this appeal. *Held*:

1. Appellants contend the trial court erred in refusing to grant a new trial on the basis that the jury verdict was contrary to the law, the evidence, the principles of justice and equity, and against the weight of the evidence. Of course, an appellate court does not weigh the evidence, but determines sufficiency. *Barnebee v. Shasta Beverages*, 184 Ga. App. 435, 436 (361 SE2d 704). The evidence was in conflict, and this presented an issue for the jury. On appeal an appellate court is bound to construe the evidence in support of the verdict and judgment, and if there is some evidence to support the verdict we will uphold the judgment. *Rossville Apts. Co. v. Britton*, 178 Ga. App. 194, 196 (342 SE2d 504). Evidence was presented at trial which would have authorized the jury to find that Vonalt was not racing with Locke, and that he was unaware of the collision between Locke and Britt. See generally *Parr v. Pinson*, 182 Ga. App. 707 (2) (356 SE2d 740). Hence, as there was some evidence which would have authorized the verdict, we find no merit to this enumeration.

2. Error is enumerated in the trial court's denial of appellant's motion in limine to exclude certain evidence. "The trial court has an absolute right to refuse to decide the admissibility of evidence, allegedly violative of some ordinary rule of evidence, prior to trial." *State v. Johnston*, 249 Ga. 413, 415 (291 SE2d 543); accord *Morris v. Southern Bell Tel. &c. Co.*, 180 Ga. App. 145 (1) (348 SE2d 573). The

judge did not err in reserving ruling on the evidence until it was proffered during the trial.

3. The appellants called Officer James E. Stephens to testify as to his investigation of this traffic incident. On cross-examination, Vonalt's counsel asked him, "on all the information that [he] obtained, it was determined that the driver of the 280 ZX was reckless . . . causing the death of a passenger—his passenger and the death of the driver of the [Britt car]. Is that your conclusion? . . . A. Yes, sir. . . . Q. All right. In the cause though of the death of these two people, is there any mention as to the red Camaro—A. No, there isn't. . . . Q. Now, Officer, your job—part of your job is to enforce the criminal laws. A. That's correct. . . . Q. And, a racing contest is illegal under the laws of this State, is it not? A. That's correct. Q. And, you are hired to prosecute people who violate laws, especially when two people die as a result of that? A. That's correct. Q. All right. Did you give any tickets in this case to Mr. Vonalt?" Objection was made and sustained. The witness did not answer and the jury was instructed to disregard. Counsel's motion for mistrial was denied.

"The granting or refusing of a motion for mistrial is necessarily a matter largely within the discretion of the trial judge, and unless it is apparent that a mistrial is essential to the preservation of the right to a fair trial, the exercise of the judge's discretion will not be interfered with." *Salmon v. Salmon,* 223 Ga. 129 (1) (153 SE2d 719). "An instruction to the jury to disregard evidence is tantamount to an exclusion." *Bowman v. Bowman,* 230 Ga. 395, 396 (197 SE2d 372). Here the question was never answered and the jury was fully instructed to disregard. The curative instructions were sufficient to purge any error which might have occurred. See *Compher v. Ga. Waste Systems,* 155 Ga. App. 819 (2) (273 SE2d 200). We find no abuse of discretion.

4. We find no prejudicial error in the refusal of the trial court to give appellants' requested instructions 17, 18 and 21. The court directed verdicts as to the acts of Locke and Vonalt constituting negligence, and further directed a verdict that Locke's negligence was a causal factor in the deaths of Britt and Patsy. She reserved for trial the issue of whether "any acts of Michael Vonalt were causal factors" in the deaths of Britt and Patsy. The requested charges dealt with whether Vonalt's actions were causal factors. The issues covered in the three requested charges were covered fully by charges similar to those rejected. *Ponder v. Ponder,* 251 Ga. 323 (3) (304 SE2d 61); *Green v. Gaydon,* 174 Ga. App. 796, 798 (331 SE2d 106); see also *Davis v. Cincinnati Ins. Co.,* 160 Ga. App. 813, 815 (288 SE2d 233).

Requested charge 21 was: "to drive two cars in tandem at excessive speeds and in a reckless manner is as much a tacit 'unlawful . . . enterprise' to violate the traffic laws of this State as an agreement to engage in 'racing.' " *Bellamy v. Edwards,* 181 Ga. App. 887, 888 (354

SE2d 434). The charge requested omitted two words crucial to the rule. The full charge is: "A *'common enterprise'* to drive two cars in tandem at excessive speeds [etc.]. . ." (Emphasis supplied.) Id. at 888. Hence, the requested charge was incomplete and not a full exposition of the legal principle involved. See *Sullivan v. Henry*, 160 Ga. App. 791, 800 (287 SE2d 652). " 'In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge.' " *Glenridge Unit &c. Assn. v. Felton*, 183 Ga. App. 858, 861 (360 SE2d 418). Here, the subject matter of these requested charges was covered in the general instructions and requested charge 21 was not completely accurate.

5. The giving of appellees' requested charge 2 is enumerated as error. In the pre-charge conference, appellants' counsel stated he had no objection to the giving of appellees' requested charge number 2. " '[Counsel] cannot complain of a judgment, order, or ruling that his own procedure or conduct procured or aided in causing.' " *Dodd v. Dodd*, 224 Ga. 746, 747 (164 SE2d 726). Acquiescence in and agreement to the giving of the charge must be construed as waiver. *Little v. Little*, 236 Ga. 102 (2) (222 SE2d 384). Induced error is an inadequate and inappropriate basis for a claim of prejudice. *Sullens v. State*, 239 Ga. 766, 767 (238 SE2d 864).

6. The trial court charged the jury that a "quotient verdict" is an improper manner and method of arriving at a verdict. She defined a "quotient verdict" as one by which the jurors agree in advance to be bound by the result of a vote taken in which each juror places a figure representing the amount of damages on a piece of paper, and the amounts on all 12 pieces of paper are totaled and divided by 12 and that figure will be the verdict. Appellees' requested charge number 8 addressed the fact that this was an improper method of arriving at a verdict. Appellants contend this was error. We do not agree. The Supreme Court condemned this type verdict in *City of Columbus v. Ogletree*, 102 Ga. 293, 298 (29 SE 749). Our court followed. *Imperial Investment Co. v. Modernization Constr. Co.*, 96 Ga. App. 385, 386 (100 SE2d 107). In *J. M. Beeson Co. v. Knowles*, 149 Ga. App. 732 (3) (256 SE2d 44), this court found no harmful error in the giving of a "quotient verdict" charge. Lack of prejudice is apparent, for the jury verdict was for the appellee and the jury was never required to reach an amount of damages.

7. Appellant complains of a portion of an overall charge on "proximate cause" in which the court used the term, "dominant cause." At issue was whether the acts of Vonalt on the evening in question which immediately preceded the incident which resulted in the deaths of Britt and Patsy was a causal factor. To state a cause of action grounded in negligence, there must be a causal connection be-

tween the defendant's conduct and the plaintiff's injury. Thus, before an alleged act of negligence is actionable, it must be proven that such negligence was the proximate cause of the plaintiff's injuries. *Whitt v. Walker County*, 176 Ga. App. 643, 645 (337 SE2d 425). The court properly and correctly charged the jury that "proximate cause is that which in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred. . . . Proximate cause is that which is nearest in the order of responsible causes as distinguished from remote, that which stands last in causation, not necessarily in time or place, but in causal relation. . . . It is sometimes called the dominant cause." The last sentence is the cause for objection.

Cases defining "proximate cause" are legion. Their diversity and flexibility are the subject of continuous but inconclusive discussion. See Prosser, Law of Torts (4th ed.), Causation in Fact; 65 CJS 1131, Neg., § 103; 57 AmJur2d 483, Neg., § 132. " 'No inflexible rule of law can be laid down for determining what would be the proximate cause of an injury. The question must be solved by the facts of each particular case. It may be stated generally that the negligence upon which a recovery can be predicated must be the chief preponderating and proximate cause of the injury.' " *Griner v. Groover*, 97 Ga. App. 753, 756 (104 SE2d 504). " 'The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones. . . .' " *Standard Oil Co. v. Harris*, 120 Ga. App. 768, 771 (172 SE2d 344). " 'The proximate cause of an injury is that cause which immediately precedes and directly produces the injury, without which the injury would not have happened. . . . *The proximate cause is the dominant cause*, not the one which is incidental to that cause. . . . The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation.' " (Emphasis supplied.) *McMahen v. Nashville &c. R. Co.*, 68 Ga. App. 397, 402 (23 SE2d 81); accord *Brown v. Ga. Power Co.*, 181 Ga. App. 500, 501 (352 SE2d 818); *Eberhart v. Seaboard &c. R. Co.*, 34 Ga. App. 49, 54 (129 SE 2).

Although we do not approve of the use of the term "dominant cause" in defining "proximate cause," in the context of the facts of this case we find no prejudicial error in view of the full and correct charge on proximate cause and the use of only a casual reference that sometimes proximate cause is called the dominant cause. *Brown, Eberhart* and *McMahen* have called "proximate cause" the "dominant cause," so the trial court's statement is correct. In other cases we have referred to "proximate cause" as the "preponderating" cause. *Griner*, supra. Accordingly, we find no reversible error in the charge as a whole.

8. We find no prejudice to appellant from the trial court's informing the jury that she has directed a verdict as to three issues: (1) that Michael Vonalt was negligent, (2) that Scott Locke was negligent, and (3) that Locke's negligence "was a causal factor" in the deaths of Britt and Patsy. She further advised them: "Now, whether or not any acts of Michael Vonalt were causal factors in the deaths of [Britt and Patsy] is a question for you, the jury, to decide, and the Court has not directed a verdict in that area." We discern no prejudice to appellant by the announcement that she has not directed a verdict against Vonalt as to causation, as this was the issue they were to try.

9. Appellants' last enumerated error was not argued in the brief and is considered abandoned.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED JANUARY 4, 1989.

Long, Weinberg, Ansley & Wheeler, J. Kenneth Moorman, Alan L. Newman, for appellants.

Downey, Cleveland, Parker & Williams, Lynn A. Downey, for appellees.