### 77334. AILION et al. v. WADE et al.
(378 SE2d 507)

BIRDSONG, Judge.

This is an appeal from the judgment entered following the jury's verdict in favor of appellees/defendants.

This case originally was tried before a jury in the Superior Court of Fayette County. The jury returned a verdict in favor of the appellants/plaintiffs on their original complaint, and against the appellees/defendants on their counterclaim. Appellees' motion for new trial was granted.

Appellants owned the Hello World Travel Service (HWTS), which they contracted to sell to the appellees. Appellants subsequently commenced suit alleging breach of contract by the appellees, and also praying for damages and certain other relief not pertinent to

the disposition of this appeal. At the time the sales contract was entered, it was required by the Air Traffic Conference (ATC) that the transfer of ownership of a travel agency's "ATC Passenger Sales Agency Agreement" could be accomplished only with the approval of its administrator. Breach of this provision or the possession of ATC documents by a new owner without prior ATC approval could be considered as grounds for the immediate removal of all traffic documents and airline plates from the offending travel agency. Also ATC required that a travel agency at all times have employed a qualified manager and at least one person who could meet the qualifications as a ticket "qualifier." Shortly after appellees signed the sales contract and before ownership transfer was approved by the ATC, the agency lost all of its ticket "qualifier" personnel.

Appellants maintain that the appellees did not timely act to hire a new ticket "qualifier" and that appellee James Wade thereafter informed ATC that the approval of the ownership transfer could not be accomplished as allegedly scheduled due to this fact. Appellants also assert that after being served with notice of litigation, the Wades abandoned the travel agency premises. Appellants further claim that appellees breached the sales contract by putting the "collateral in jeopardy," primarily by not timely hiring the "qualifier." Moreover, appellants assert that the ATC ultimately removed the ticket stock and plates from the agency because appellees had informed them prematurely that the agency did not have a "qualifier" in its employment.

Appellees dispute the above assertions. They maintain that they were reasonably acting to obtain the services of a "qualifier," and that under the sales contract terms, their 120-day grace period had not yet expired. Appellee James Wade denied informing anyone at ATC that the Wades wanted out of their contract. He also testified that he did not solicit ATC to take the agency's plates. The Wades deny that they abandoned the business, but assert that on the day ATC seized the ticket stock and plates that appellant Richard Ailion ordered them from the premises and demanded their door and mailbox key. Further, appellee James Wade asserts that when he was checking on the status of his ownership application, ATC raised a question about who was in control of the agency at that time, and that he informed them that the appellees were running the travel agency. Mr. Wade also at ATC's request mailed them a copy of the sales contract. Mr. Wade also testified to, and Mr. Ailion denied, having a phone conversation among the two men and a lady from ATC. Mr. Wade asserts that, in this phone conversation, the ATC representative informed them that the ticket stock and plates were being removed because the travel agency was being run by appellees before ATC approval was obtained.

The sales contract, executed on February 7, 1984, pertinently provided that: "Purchaser [appellees] shall take possession of the Business . . . on February 11, 1984; however, this sale shall be specifically contingent upon Purchaser receiving approval by . . . (ATC) for the change of ownership. . . . In the event, Purchaser shall be denied approval by ATC or shall be approved by ATC within . . . (120) days from the date of this agreement then, Purchaser's down payment and any monthly payments made by Purchaser shall be returned to Purchaser. . . . All earnings of the agency shall be held until approval by ATC shall be either granted or denied or . . . (120) days from the date of this agreement whichever shall first occur. . . . In the event approval shall be denied or approval has not been obtained with[in] . . . (120) days stated above, all profits shall be the property of seller, . . . all [said] monies paid by Purchaser hereunder shall be held in escrow until one of the preceding events has occurred in accordance with the provisions hereunder."

On May 14, 1984, ATC seized the agency's ticket stock and plates, and the appellees were, during this incident, served with legal process in a suit initiated by appellants. These events occurred before the expiration of 120 days after execution of the sales agreement. *Held*:

1. Appellees' motion for imposition of penalties, pursuant to Court Rule 26 (b), is denied.

2. Appellees' motion to dismiss appeal is denied. In the instant case, the jury returned a verdict for the defendants/appellees. On December 15, 1987, the trial court entered judgment on the verdict. A motion for new trial also was filed by plaintiffs/appellants on December 15, 1987. A rule nisi issued for a hearing on the motion for January 28, 1988. The hearing motion was continued to March 1, 1988. On March 4, 1988, appellants requested permission to withdraw their motion for new trial. On that same date, the trial court entered a written order, to-wit: "Upon the specific written request of counsel for the plaintiffs, the Motion for New Trial regarding the above-referenced case is hereby withdrawn." Notice of appeal was filed March 10, 1988.

OCGA § 5-6-38 (a) pertinently provides "[a] notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of; but when a motion for new trial . . . has been filed, the notice shall be filed within 30 days after the entry of the order granting, overruling, *or otherwise finally disposing of the motion.*" (Emphasis supplied.)

The facts of this case materially differ from *Taylor v. State*, 173 Ga. App. 745 (327 SE2d 860) wherein a defendant withdrew his motion for new trial but there was no written order of the court disposing of the motion. Expressly noting the lack of a court order either disposing of the motion or granting a time extension, this court in

*Taylor* held that the appeal must be dismissed for failure to file timely notice of appeal.

The facts of this case also materially differ from *Golden v. Credico, Inc.*, 124 Ga. App. 700 (185 SE2d 578), where the return of a motion for new trial was accomplished by a letter from the trial judge. This court in *Golden* refused to accept the letter as a proper order of the court, and ultimately concluded that the letter did not otherwise finally dispose of the case within the meaning of Code Ann. § 6-803 (now OCGA § 5-6-38).

We believe the procedure used by the trial court in this case in response to movant's motion to withdraw constitutes a legitimate exercise of court power "otherwise finally disposing of the motion" within the meaning of OCGA § 5-6-38 (a). See generally OCGA §§ 1-3-1 (c), 5-6-30; 15-6-8. Hence, the unconditional withdrawal of the new trial motion, by filing of a written order of the court, states anew the running of the statutory 30-day period of OCGA § 5-6-38 (a) in which appellant can timely file notice of appeal. In this case the order of withdrawal was filed on March 4, 1988, and the notice of appeal was filed on March 10, 1988. Thus, the notice of appeal was timely filed.

3. Appellant enumerates as error "[t]hat the [trial c]ourt erred in giving Defendants' requested Charge No. 7, over Plaintiffs' objection." This enumeration of error is without merit as the record conclusively establishes that the trial court did not give the requested Charge No. 7, but rather instructed the court as hereinafter discussed.

Appellants attempt to expand the scope of its enumeration of error in its brief by contending that the trial court erred in giving the following charges to the court. "I charge you that a contract may also be absolute or conditional. In an absolute contract, every covenant between the parties is independent, and the breach of one does not relieve the obligation of the other. In a conditional contract, the covenants are dependent upon each other, and the breach of one is a release of the binding force of all the other dependent contracts. . . . I charge you that the contract here in issue was a conditional contract, and if you find that the parties contracted breached a covenant upon which the other party's duty to perform was conditioned, you are then authorized to find that the nonbreaching party is released from their duty to perform under the contract." Appellant did not specifically object to these charges after the charges were given and before the verdict was announced. See generally *Sims v. Johnson*, 185 Ga. App. 720 (365 SE2d 532); *Brown v. Sims*, 174 Ga. App. 243, 244 (329 SE2d 523). Nor did any of the objections made at the precharge conference, and *allegedly* reserved thereafter, specifically pertain to these particular charges.

Defendants' requested Charge No. 7 provides: "I charge you that

if you find from the evidence that the Plaintiffs have failed to comply with a condition of the contract, and that their compliance with this condition was necessary and precedent to the Defendants' obligation to give full contractual performance, a verdict for the Defendants would be proper. He who would enforce the performance of a contract must himself abide by its terms." The above charges to the jury substantially differ from defendants' requested Charge No. 7.

It is well-established that " '[a]n enumeration of error cannot be enlarged at the appellate level by statements in the briefs of counsel to include issues not made in the enumeration.' [Cits.] . . . One cannot expand the scope of review or supply additional issues 'through a process of switching, shifting, and "mending your hold." ' " *City of College Park v. Ga. Power Co.*, 188 Ga. App. 223-224 (372 SE2d 493). Accordingly, appellant has not preserved an issue on appeal regarding the giving of the above charges to the jury. Moreover, while we find that the charges given might not qualify as a model of legal draftsmanship, these charges are not so conflicting on their face as to be confusing to a jury to the point that it "cannot render an intelligible verdict." *Rizer v. Harris*, 182 Ga. App. 31 (3) (354 SE2d 660). Nor would these charges, when examined on their four corners, affect the substantial rights of the appellants in this proceeding. We thus are satisfied that the giving of the above charges was not inconsistent with substantial justice, and that assuming but not deciding an error occurred it was harmless. OCGA § 9-11-61. See also OCGA § 13-1-7.

4. Appellant asserts that the weight of the evidence is contrary to the verdict. We disagree. The obligation to weigh the evidence and to determine witness credibility rests with the jury. "This court considers only the sufficiency of the evidence. . . ." *Parr v. Pinson*, 182 Ga. App. 707 (1) (356 SE2d 740). On appeal an appellate court is bound to construe the evidence in support of the verdict and judgment, and if there is some evidence to support the verdict, we will uphold the judgment. *Locke v. Vonalt*, 189 Ga. App. 783 (___ SE2d ___) (1989). Applying these principles to the case sub judice, we find ample support in the record for the jury's verdict.

*Judgment affirmed. Banke, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 2, 1989.

*Murray M. Silver*, for appellants.
*J. Philip Hancock, John W. Lawson*, for appellees.