A90A1419. T. J. MORRIS COMPANY v. DYKES.
(398 SE2d 403)

BANKE, Presiding Judge.

As the appellee, who owns and operates a grocery store, was helping to unload a shipment of food from a delivery truck belonging to

the appellant, which is in the wholesale food business, two boxes of frozen meat weighing approximately 70 pounds each fell from the truck, striking him on the back and neck. He brought the present action against the appellant to recover for his resulting injuries. The case has been tried twice. The first trial resulted in a defense verdict, following which the appellee-plaintiff moved for and was granted a new trial. The second trial resulted in a verdict in favor of the appellee in the amount of $130,000. The trial court denied the appellant's subsequent motion for new trial, and the present appeal followed. *Held*:

1. The appellant contends that the trial judge erred in refusing to exclude certain hearsay testimony offered by the appellee and two other witnesses recounting certain statements assertedly made to them by the appellant's driver regarding why the boxes had fallen.

The appellee was standing on the ground when the accident occurred, attempting to lift a box of frozen chicken from the bed of the truck onto a dolly. As he was doing so, a stack of approximately seven other boxes of frozen meat inside the truck began to fall over. According to the appellee, the appellant's driver, who was standing on the bed of the truck at the time, placed his back against the boxes in an attempt to hold them in place, but the two on top were stacked above his head and consequently slid down despite his efforts. Afterwards, the two men finished unloading the truck and went inside the store, where the driver telephoned his employer to report the incident. The appellee testified that after the driver completed this call he asked him what had happened, and the driver told him that "they had placed [a] beef box in betwixt the chickens and the beef box had collapsed." In subsequent testimony, the appellee maintained that the beef boxes were not as sturdy as the chicken boxes and that, unlike the chicken boxes, they were not always filled to the top.

The appellee produced two other witnesses who testified that the driver had made similar statements to them regarding the cause of the accident. The first was a woman who had begun working at the store approximately two months after the accident but who was no longer employed there at the time of trial. She testified that approximately a year after the incident, the appellant's driver told her that the reason the stack of boxes had fallen was because the appellant's employees "had put the beef box in the middle in between the chicken boxes and . . . the beef box wouldn't hold up to the pressure of the chicken boxes." The second such witness, who had owned another grocery store in the area at the time of the accident, testified that the appellant's driver similarly told him that "one of the boxes . . . toward the bottom [of the stack had] crushed." However, the driver was called as a witness by the appellant and denied ever having told anyone that he "thought there was something wrong about stack-

ing a chicken box on top of a beef box."

The appellant contends that all of this testimony regarding the out-of-court statements assertedly made by the driver should have been excluded as inadmissible hearsay, arguing that the statements could not be considered part of the res gestae of the accident because they were not made contemporaneously therewith or under such circumstances as to render them "free from all suspicion of . . . afterthought" within the contemplation of OCGA § 24-3-3, and that they could not be considered admissions by an agent imputable to the principal under OCGA § 24-3-33 because the driver was not shown to have been acting within the scope of his authority as an employee when he made the statements. See *Gordon v. Athens Convalescent Center*, 146 Ga. App. 134 (1), 135 (245 SE2d 484) (1978). While we tend to agree with the appellant that neither of these exceptions to the hearsay rule was applicable under the circumstances, we nevertheless conclude, for the following reasons, that the testimony was admissible.

"The hearsay definition in [OCGA § 24-3-1] speaks of rejecting hearsay because its probative value does not rest on the credit of the witness reporting it. This statement has been interpreted to mean that credit is established only after a statement has been subjected to cross-examination, and an out-of-court statement which is not subjected to cross-examination generally has insufficient credit to be admissible. The writers in the field of evidence and the courts generally agree that the lack of opportunity for cross-examination is the one most cogent reason for rejecting hearsay." Green, Ga. Law of Evidence (3d ed.), § 219, p. 394. Accord *Shelton v. Long*, 177 Ga. App. 534 (1) (339 SE2d 788) (1986).

The appellant did, of course, have an opportunity to examine the declarant in the present case, since the declarant was present in court and in fact testified regarding what he had seen and whether he had made the statements attributed to him. Moreover, the reliability of the testimony offered by the appellee and the other two witnesses in this regard was enhanced by the fact that all three of them reported having heard the declarant say essentially the same thing. Because the declarant was present in court and because the testimony of these witnesses was thus corroborated, we hold that the trial court did not err in admitting it.

2. The evidence offered by the appellee, construed in favor of the verdict, was sufficient to support an inference that the accident had been caused by the negligence of the appellant's employees in failing to stack the boxes on the truck in a stable and secure manner. Accordingly, the trial court did not err in denying the appellant's motion for directed verdict.

3. The appellant complains that the jury was given an erroneous

charge on the definition of negligence. The court's charge in this regard was as follows: "Now every person in our state or every corporation or firm or collection of individuals owes to every one else a duty not to harm those persons. . . . This is an affirmative legal duty, it is imposed by law, it goes with us by day and by night in all things. And so in [this] case the allegation is that where there was a duty on the part of [the appellant] not to injure [the appellee], yet it has done so. Not by criminal acts, that is not brought in here, nor by any claim or moral wrong doing[, b]ut by negligence. . . . Now simple negligence is easy to state. It is either doing what the law itself says should not be done which results in the injury or damage of someone, or simple negligence is a failing to do, that is an omission to act in such way that did bring about by such omission, such damage or injury."

We must agree with the appellant that this charge was deficient in that it implied that negligence is the breach of an absolute duty to avoid injuring others rather than a failure to exercise "that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances." OCGA § 51-1-2. See generally Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. 1: Civil Cases (2d ed.), p. 288. The court's failure to give a correct charge on this fundamental principle must, of course, be considered reversible error.

4. The appellant contends that the court also gave an erroneous charge on the issue of proximate cause as follows: "The term proximate cause comes up. Now this word proximate . . . is not the same as the word approximate. . . . [T]he word proximate . . . is a different word entirely, it's a legal term and we encounter it here and it has to do with nearness, that is what is in proximity, you see, or closeness or nearness to a thing. Now proximate cause becomes clearer when we see this principle involved. If the [appellant] was negligent . . . in one or more of the ways alleged by the [appellee], and if that is proven to you to have occurred by a preponderance of the evidence, then you look to another link in the chain leading toward the answer to the question for liability or not, and that is whether such negligence proximately caused injuries to the [appellee]. Was the action of the company near in terms of causation. It doesn't have to be near in terms of time, although time and time intervals may be considered by you, whatever the evidence is. It does not have to be near in physical terms though those things can be included but we are really talking about proximate cause meaning that which is nearest in terms of cause to what happened. So you understand the word proximate as it is used here, meaning proximity or having to do with proximity or nearness to that which happened."

In addition to being confusing, these instructions failed to convey the fundamental principle that "proximate cause is that which, in the

natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred." See *Locke v. Vonalt*, 189 Ga. App. 783 (7), 788 (377 SE2d 696) (1989). See also Suggested Pattern Jury Instructions, supra, p. 286. Accordingly, we hold that this portion of the court's charge also constituted reversible error.

5. The appellant contends that it was entitled to a charge on comparative negligence because the evidence showed "that [the appellee] had been in the business of loading and unloading delivery trucks for over 20 years and that he was in as good a position as the truck driver to determine risks." However, there was no evidence whatever that the appellee knew or should have known that the boxes which fell on him had not been stacked securely, nor was there any evidence suggesting that he otherwise failed to exercise reasonable care for his own safety. Accordingly, this enumeration of error is without merit.

6. The appellant contends that the trial court erred in charging the jury that they could consider the appellee's "out of pocket business losses" as an element of damages when there was no evidence to support such an award of damages. While the appellee does not dispute that he failed to present evidence from which an award of such damages could have been calculated, he contends that this charge could not have harmed the appellant because the court emphasized to the jury such damages could not be recovered "if they are speculative, if they require guessing." Since the judgment of the trial court is being reversed on other grounds, we need not reach the issue of whether the charge was harmful; however, we caution that such a charge should not be given upon any retrial of the case unless evidence has been presented which would support a recovery of such damages.

7. The appellant contends that the court erred in refusing to charge the jury that the appellee could not recover for his injuries to the extent that he could have lessened them by obtaining prompt medical treatment or following sound medical advice. The evidence showed that the appellee put off seeking medical treatment for approximately a year before ultimately undergoing shoulder surgery for a torn rotator cuff. However, there was absolutely no evidence from which it could be inferred that such surgery would not have been necessary had he sought medical treatment sooner, nor was there any showing that he could have lessened his injuries by following medical advice. Furthermore, an examination of the transcript reveals that the court in fact charged the jury that if the appellee "could have reduced [his] injuries or the results of these injuries, or the degree of these injuries or pain and suffering or losses, then he would have a duty to exercise ordinary care and caution to reduce and as far as possible, to minimize such losses and damages." See generally OCGA § 51-12-11.

Accordingly, this enumeration of error is wholly without merit.

8. The appellant contends that the trial court erred in allowing the videotaped deposition of the appellee's treating physician to be played to the jury, without first requiring the appellee to make a showing of the witness' unavailability in accordance with OCGA § 9-11-32 (a) (3). As the trial court has the discretion under OCGA § 9-11-32 (a) (4) to permit a deposition to be used at trial even without a showing of the witness' unavailability, this enumeration of error is also without merit. See *Atlanta Coca-Cola Bottling Co. v. Rosser*, 250 Ga. 52 (295 SE2d 827) (1982).

9. The appellant's remaining enumerations of error will not be addressed because they concern matters which are unlikely to occur upon any retrial of the case.

*Judgment reversed. Birdsong and Cooper, JJ., concur.*

DECIDED OCTOBER 11, 1990 —
REHEARING DENIED OCTOBER 26, 1990 —

*Adams, Gardner, Ellis & Inglesby, Ronald C. Berry, Robert B. Turner*, for appellant.

*D. Duston Tapley, Jr.*, for appellee.